IN THE COURT OF APPEALS OF TENNESSEE

| | |
|---|---|
| MARY CAMILLE GIVLER, | ) C/A NO. 03A01-9702-CV-00061 |
| Plaintiff-Appellant, | ) |
| v. | ) |
| DEAN MARK GIVLER, | ) |
| Defendant-Appellee. | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| | ) BLOUNT COUNTY CIRCUIT COURT |
| MARY CAMILLE GIVLER, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) |
| DEAN MARK GIVLER and wife, ALMA GIVLER, | ) |
| Defendants-Appellees. | ) HONORABLE W. DALE YOUNG, ) JUDGE |

FILED

September 30, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

For Appellant

JANET L. HOGAN
Hogan & Hogan, P.L.L.C.
Knoxville, Tennessee

For Appellees

DEAN M. GIVLER, Pro Se
Friendsville, Tennessee

ALMA GIVLER, Pro Se
Friendsville, Tennessee

O P I N I O N

REVERSED IN PART
AFFIRMED IN PART
REMANDED WITH INSTRUCTIONS

Susano, J.

1

This is a post-divorce case. Mary Camille Fraley ("Wife") seeks a finding that her former husband, Dean Mark Givler ("Husband"), is in civil contempt of court because of his alleged failure to obey the trial court's order to pay her alimony *in futuro* of $500 per month. By way of a counter-petition, Husband seeks to terminate his alimony obligation; his application is predicated on an alleged change in the parties' circumstances. Following a bench trial, the court below denied Wife's motion for contempt; decreed that Husband's alimony obligation was "suspended from and after May 23, 1996"; and dismissed Wife's "Creditors Bill," a lawsuit that had been transferred to the trial court from the Blount County Chancery Court.[1] Wife appealed, arguing that the trial court erred in denying her motion for contempt and in dismissing her suit in chancery. She also contends that the trial court committed error when it, in effect, terminated Husband's alimony obligation. She seeks attorney's fees incurred in connection with this appeal.

Our review is *de novo*; however, the record of the proceedings below comes to us accompanied by a presumption that the trial court's findings are correct. Rule 13(d), T.R.A.P. We must honor this presumption unless the evidence preponderates against those findings. *Id*. The trial court's conclusions of law are not afforded the same deference. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993).

---

[1]The trial court also denied Husband's motion styled "Conspiracy to Defraud the Court" which sought punitive damages of $60,000, and Wife's "Motion to Tax Costs and Expenses on [Husband's] Motion for Conspiracy." Neither party has raised any issues with respect to these rulings.

I.  *The Divorce Judgment*

Wife filed a complaint for a bed and board divorce on June 3, 1989. She subsequently sought, and was granted, an absolute divorce by decree entered August 16, 1989.  The divorce was granted pursuant to the parties' T.C.A. § 36-4-129 stipulation.  At the final hearing, the parties presented proof regarding an equitable division of their property and debts.  These issues were taken under advisement by the trial court.  It decided these remaining issues in a memorandum opinion filed October 4, 1989, which memorandum was subsequently memorialized by a final decree entered October 27, 1989.  As pertinent here, the trial court found that Husband's "benefit of $1,659.93 per month under his pension-retirement plan with the City of Naperville, Illinois, [was] a marital asset," but concluded that the "equities of [the] case" were such that the pension should be awarded totally to Husband.

On appeal to this court, a panel of the Western Section modified the trial court's judgment, *see* **Givler v. Givler**, C/A No. 181, 1990 WL 188676 (Court of Appeals, Western Section at Knoxville, December 3, 1990), by decreeing as follows:

> . . . we award the plaintiff $500 monthly in
> the form of alimony *in futuro*.  This award
> shall continue only as long as defendant is
> alive and the time for payment shall
> correspond to defendant's monthly receipt of
> his pension check.  Payment to plaintiff
> shall be within one week from defendant's
> receipt of his pension allowance each month.

3

*Id.* 1990 WL 188676 at *4.[2]  On remand, the trial court entered an order on February 4, 1991, setting forth the modification decreed by this court.[3]

## II.  *Prior Post-Divorce Proceedings*

Prior to filing the subject motion for civil contempt, Wife had, on at least two occasions, filed motions seeking to enforce the trial court's alimony decree.  One motion was resolved by the entry of an agreed order on October 7, 1992, under the terms of which Husband agreed to pay $15,000 to satisfy all alimony due through September 30, 1992.[4]  A subsequent motion was addressed by the entry of an order on July 19, 1993, awarding Wife a judgment for an alimony arrearage of $2,500.  In neither of these proceedings did the trial court find Husband in willful contempt, despite his acknowledgement in both cases that he had not paid the alimony ordered by the court.

## III.  *The Current Proceedings*

The current litigation began when Wife filed a motion for civil contempt on February 16, 1996.  In denying Wife's motion, the trial court made the following findings:

---

[2]We note, in passing, that Husband contends his pension is not subject to attachment or execution under Illinois law.  While this is not clear from the record, it may explain why the pension was not apportioned between the parties.

[3]A subsequent appeal to this court was required to establish the effective date of our modification.  In an opinion filed September 3, 1991, we held that the modification was effective October 27, 1989, the date of the trial court's property division decree.  *See* **Givler v. Givler**, C/A No. 03A01-9104-CV-00134, 1991 WL 167155 (Court of Appeals, Eastern Section at Knoxville, September 3, 1991).

[4]This payment was apparently made as agreed to.

4

> It is clear from the proof that Defendant has utilized his only source of income, his retirement pension, for the payment of other debts, including his living expenses. Despite the fact that the Court finds that Mr. Givler took available funds and diverted them to the payment of other debt obligations instead of complying with the Court-imposed obligation to make regular periodic payment of alimony, the Court is unable to find that Mr. Givler is in willful contempt of the Court's order.

The trial court "suspended" Husband's alimony obligation, finding that

> . . . Defendant suffers from heart disease, resulting in the total blockage of one artery and the partial blockage of two additional arteries. The undisputed testimony of record is that Defendant's heart condition is acute and that it prohibits him from engaging in gainful employment, at this time.
>
> Defendant's health condition constitutes a substantial and material change in circumstances and the Court is of the opinion that Defendant's alimony obligation should be suspended from and after May 23, 1996 and until further orders of the Court.

Finally, as pertinent here, the court dismissed Wife's complaint in chancery seeking the appointment of a receiver of Husband's assets, which complaint is based on his alleged efforts to defraud his creditor, i.e., his former wife. In so doing, the trial court stated that Wife had failed to establish that Husband had "employed any fraudulent conveyances of property or other devices . . . for the purpose of hindering and delaying creditors."

IV.  *Wife's Suit in Chancery*


Wife's complaint in chancery alleges that Husband and his present wife, Alma Givler, who was also named as a party defendant in the chancery complaint, have "devised and entered into a scheme to defraud or constructively have defrauded" Wife with respect to Husband's alimony obligation.  The complaint relies upon the provisions of T.C.A. § 29-12-101:

> Any creditor, without first having obtained a judgment at law, may file his bill in chancery for himself, or for himself and other creditors, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors, and subject the property, by sale or otherwise, to the satisfaction of the debt.

The complaint seeks the appointment of a receiver and alleges that Wife is entitled to the remedies set forth in T.C.A. §§ 66-3-310 and 66-3-312.[5]

---

[5]These Code sections provide as follows:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when the claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived titled immediately or mediately from such a purchaser.
> (1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy the creditor's claim; or
> (2) Disregard the conveyance and attach or levy execution upon the property conveyed.

T.C.A. § 66-3-310.

> Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured, the creditor may proceed in a court of competent jurisdiction against any person against whom the creditor could have proceeded had the claim matured, and the court may:
> (1) Restrain the defendant from disposing of the defendant's property;
> (2) Appoint a receiver to take charge of the property;
> (3) Set aside the conveyance or annul the obligation; or
> (4) Make any order which the circumstances of the case

6

Our review of the record does not persuade us that the evidence preponderates against the trial court's finding that Wife failed to prove, by a preponderance of the evidence, that Husband has engaged in "fraudulent conveyances of property, or other devices resorted to for the purpose of hindering and delaying creditors,..." *See* T.C.A. § 29-12-101.  In deciding this matter, the trial court obviously believed Husband and his wife when they testified that they did not place their new residence in their joint names or establish their bank accounts in Tennessee and Illinois for the purpose of fraudulently placing Husband's assets beyond the reach of execution.  "[O]n an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." **Tennessee Valley Kaolin v. Perry**, 526 S.W.2d 488, 490 (Tenn.App. 1974).  We are unable to say that the transactions -- in and of themselves -- belie the testimony of Husband and his present wife that the transactions in question were not fraudulent in nature or not otherwise such as to trigger the application of T.C.A. § 29-12-101.  Wife's issue as to the complaint in chancery is found to be without merit.

V.   *Termination of Alimony*

---

may require.

T.C.A. § 66-3-312.

Wife contends that the trial court erred when it "suspended" Husband's alimony obligation effective May 23, 1996, the date on which he filed his counter-petition. We agree.

A "court may decree an increase or decrease of [an] allowance [of spousal support] only upon a showing of a substantial and material change of circumstances." T.C.A. § 36-5-101(a)(1). The requirement of a substantial and material change of circumstances is consistent with the legal principle that a court decree is *res judicata* as to the facts existing at the time of the earlier decree. **Hicks v. Hicks**, 176 S.W.2d 371, 374-75 (Tenn.App. 1943). In **Elliot v. Elliot**, 825 S.W.2d 87 (Tenn.App. 1991), we addressed the principles applicable to a petition to modify an alimony award:

> The party seeking relief on the grounds of changed circumstances has the burden of proving the changed circumstances justifying an increase or decrease in the amount of the alimony award. (citation omitted). The change in circumstances must be shown to have occurred after the entry of the divorce decree, and must not have been foreseeable at the time the decree was entered into. (citation omitted). Changes in circumstances are not material if such changes were in the contemplation of the parties at the time they entered into the Support and Alimony Agreement. (citation omitted).

*Id*. at 90.

In determining where the preponderance of the evidence lies on the question of whether Husband's alimony obligation should be suspended or terminated, we focus on the parties'

8

circumstances at the time of the divorce and those existing at the time of the most recent hearing below.

At the time of the divorce, Husband's pension was $1,659.93; by the time of the most recent hearing, it had increased to $2,139. Wife was employed in October, 1989; through no fault of her own, she was unemployed when this matter was heard on August 13, 1996. Since the divorce, Husband and his new wife have moved into a new, very attractive[6] house containing over 2,700 square feet. In 1995, they built a 1,089 square foot addition to accommodate Husband's woodworking business.[7] While Husband's monthly expense payments total $2,217.39, many of the items on his list are joint expenses. The present Mrs. Givler earns approximately $15,000 gross per year. In fairness, some of these expenses -- such as the first mortgage -- are properly allocated fifty percent as a charge against her income.

Since the divorce, Husband and his wife have purchased a $7,000 van and built the previously-mentioned addition to their house at a cost of $33,000.

Husband relies, as did the trial court, upon his heart disease as justification for the "suspension" of his alimony. The evidence preponderates against such a finding. In the first place, Husband's basic heart problem is not a change in circumstances; Husband suffered a heart attack in 1987, *prior to*

---

[6]A photograph of their house was received into evidence.

[7]Husband was "unable" to give even an estimate of his income from woodworking. We can only assume there was some net income to justify building a $33,000 addition to the house to accommodate this business venture.

9

*the divorce*.  Furthermore, his heart disease does not prevent him from receiving his pension check or from pursuing his woodworking business.[8]  He did testify that one of his arteries was completely blocked, while two others were partially blocked. Since there was no showing that Husband was an expert in heart disease, it is clear that this was hearsay testimony -- hardly persuasive evidence of the conditions described.  There was absolutely no expert testimony that Husband's heart disease had worsened since the divorce, and no testimony of any kind that it was impairing his ability to function as a normal human being.

Husband also points to the fact that Wife's daughter lives with her and helps with the expenses.  He also relies upon the fact that Wife settled a personal injury claim for a net of $17,000.  The proceeds of the settlement were used to buy an automobile[9] for Wife.  Her daughter's payment of $140 per week -- some $600 per month -- was less than the mortgage on Wife's residence ($667.69) and was hardly sufficient to defray Wife's monthly expenses of some $2,158.  Wife's unemployment compensation of $251 per week was not only temporary in nature, but was also not enough, even when coupled with her daughter's payment, to defray her monthly expenses.

Wife argues that Husband's obligation to pay her $500 per month is really a part of the division of the parties' marital property, and thus not subject to modification in any event.  She relies upon the case of **Towner v. Towner**, 858 S.W.2d

---

[8]The trial court referred to Husband's woodworking as a "hobby"; but it is clear from the record that he sells his products.

[9]It replaced an automobile "totaled" in the accident.

888 (Tenn. 1993). In **Towner,** the Supreme Court dealt with a "spousal support" provision in a Property Dissolution Agreement that contained the following language:

> The spousal support/alimony is specifically
> in consideration of the wife waiving any
> right to the husband's military retirement
> and therefore shall continue for the lifetime
> of the husband.

*Id*. at 889. The Supreme Court in **Towner** held that the parties' agreement, "considered in light of all the circumstances, is essentially a property settlement agreement, rather than an order of support." *Id*. at 891.

We believe that the facts of the instant case are distinguishable from those of **Towner**. Here, the subject decree specifically recites that the payment is "in the form of alimony *in futuro*." While the decree does refer to Husband's pension check, it does so only as a point of reference -- "the time for payment [of the alimony *in futuro*] shall correspond to defendant's monthly receipt of his pension check." In **Towner**, the payment to wife was "in consideration of the wife waiving any right to the husband's military retirement," a *quid pro quo* as it were. "[C]onsidered in light of all the circumstances," *see* **Towner** at 891, we find that the payment before us is, as stated by the court, "alimony *in futuro*," and not a part of the division of property. In so holding, we recognize that our award of alimony *in futuro* was prompted by our finding that the award of the entire pension to Husband was not equitable; but this does not mean that our award is a division of that asset. A court, in

11

considering alimony, is entitled to weigh "[t]he provisions made with regard to the marital property as defined in [T.C.A.] § 36-4-121." *See* T.C.A. § 36-5-101(d)(1)(H). This is what occurred in this case. We hold that the award in this case is periodic alimony *in futuro*, modifiable under appropriate circumstances, and enforceable by invocation of the court's contempt power if the failure to pay is willful.[10]

While finding that the subject payment is periodic alimony *in futuro* and hence subject to modification, we conclude, in this case, that there has been no showing of a change of circumstances justifying a change in that payment. Accordingly, so much of the trial court's judgment as suspends Husband's alimony obligation as of May 23, 1996, is hereby reversed.

## VI. *Contempt Petition*

We find that the evidence preponderates against the trial court's finding that Husband is not in willful contempt. The instant case is at least the third time that the trial court has failed to find Husband in contempt even though Husband's monthly pension benefit -- which prompted our award of spousal support in the first place -- has increased from $1,659.93 per month to $2,139. The trial court's most recent determination of no willful contempt flies in the face of his finding, which is

---

[10]Generally speaking, a payment that is a part of a division of property is not enforceable by incarceration for contempt. *See* Article I, Section 18, Tennessee Constitution. *See also* **Morris v. McLearen,** C/A No. 01A01-9007-CV-00256, 1991 WL 57984 (Court of Appeals, Western Section at Jackson, April 19, 1991); **Rogers v. Rogers** (Court of Appeals, Western Section at Jackson, July 22, 1981); **Mills v. Frey** (Court of Appeals, Western Section at Jackson, August 11, 1980); **Largent v. Largent** (Court of Appeals, Western Section at Jackson, March 11, 1980).

supported by overwhelming evidence, that Husband "took available funds and diverted them to the payment of other debt obligations instead of complying with the court-imposed obligation to make regular periodic payment of alimony."

When reduced to its simplest terms, Husband's *real* complaint is with this court's *original* award of alimony. This can be seen from his comments in the record:

> ...this whole thing was just shoved down our throat, and there is no logic behind it. There is no logic behind the Court of Appeals taking $500 from $1,659.
>
>                 *    *    *
>
> I didn't even consider that the appeals court would come out with a decision like they did.
>
>                 *    *    *
>
> I don't understand their logic or lack of logic.

He also argues that he relied upon the trial court's original decree and undertook obligations when the first appeal to this court was pending. He says these new obligations -- including his remarriage -- now place him in a position where it is now impossible for him to comply with the court's alimony decree. There are at least three answers to this argument. First, Husband relied upon the trial court's divorce judgment at and to his peril since, as he knew, the division of property was being questioned on appeal. He relied upon a judgment that he knew full well was not final, and he will not now be heard to complain. Second, his voluntary assumption of new obligations does not excuse his failure to comply with the court-imposed

13

alimony obligation. *See* **Cannon v. Cannon**, 34 Tenn.App. 568, 241 S.W.2d 435 (1951); **Johnson v. Johnson**, 499 S.W.2d 268, 271 (Tenn.App. 1973); **Jones v. Jones**, 784 S.W.2d 349, 353 (Tenn.App. 1989); and **Bradshaw v. Bradshaw**, 23 Tenn.App. 359, 133 S.W.2d 617, 619 (1939). Finally, despite his protestations to the contrary, it is obvious to us that he *does* have the funds from which the alimony can and, according to law, must be paid. The Court of Appeals decreed the alimony obligation because of the inequitable allocation by the trial court of the $1,659.93 monthly pension payment. That payment is now $2,139.

For all of the foregoing reasons, the judgment of the trial court denying Wife's motion for civil contempt is hereby reversed. We find Husband in civil contempt. We further find that he has the ability to pay the court-ordered alimony and hence the ability to purge himself of his civil contempt.

This matter is remanded to the trial court for the entry of an order decreeing the following:

1. Denying Husband's counter-petition to terminate his alimony obligation.

2. Finding Husband in willful civil contempt of court and ordering that he be incarcerated until he demonstrates a willingness to pay the alimony decreed by the court.

3. Awarding Wife a judgment for alimony arrearage, to include any previous awards that have not been paid; said arrearage to also include all alimony due and unpaid up to the entry of the order on remand.

4. Providing that the arrearage is to be paid at the rate of $250 per month until paid in full.

14

5. Providing that Husband's initial payment of $750 (regular $500 payment plus $250 payment on arrearage) is to be in Wife's hands on or before October 22, 1997, and, thereafter in subsequent months, within one week of the deposit of Husband's pension check to his bank account. The order will direct Husband to forthwith advise Wife of the day of the month on which the deposit is normally made.

6. Suspending the order of incarceration and providing that, so long as Husband makes the $750 monthly payment specified herein, beginning with the payment due October 18, 1997, he will be deemed purged of his contempt. If Husband fails to make the aforesaid $750 monthly payments in a timely fashion, Wife shall file an affidavit with the trial court setting forth Husband's failure to comply with the court's order. Upon the filing of a motion on Wife's behalf calling her affidavit to the attention of the court, the court will enter an order requiring Husband to appear and show cause, if any he has, why the suspension of the incarceration order should not be revoked and Husband immediately incarcerated until he demonstrates a willingness to obey the court's order.

7. Providing that all costs below associated with the motion for contempt and the counter-petition to terminate alimony are taxed against Husband.

8. Awarding Wife a reasonable amount against Husband as an allowance on her attorney's fees and expenses for services performed on this appeal.

9. Providing that the provisions of the order to be entered on remand dealing with the liquidation of the arrearage are without prejudice to Wife's statutory execution rights.

15

Under the circumstances of this case, we deem it appropriate that the aforesaid order will also provide that this matter be transferred to another judge of the 5th Judicial District for any further proceedings that may be necessary.

In this case, Wife sought the assistance of the court in securing the payment of Husband's court-ordered obligation. *See* **Sherrod v. Wix,** 849 S.W.2d 780, 786 n.4 (Tenn.App. 1992). We find, by clear and convincing evidence, that Husband has the necessary funds every month -- a monthly pension benefit of $2,139 -- to pay Wife the $500 per month alimony *in futuro* ordered by the court. "If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, he may be imprisoned until he performs it." T.C.A. § 29-9-104. Husband's omission to pay Wife is properly classified as civil contempt. "A civil contempt is one where a person refuses or fails to comply with an order of the court and punishment is meted out for the benefit of a party litigant." **Garrett v. Forest Lawn Memorial Gardens, Inc.**, 588 S.W.2d 309, 315 (Tenn.App. 1979).

Husband has the financial ability -- and we have given him the power -- to avoid incarceration. He has the keys to the jail in his own pocket. We can only hope that Husband will avoid imprisonment by complying with the order to be entered on remand.

The appellant's motion to disregard the appellees' brief is denied. The appellees' motion to dismiss this appeal is also denied.

16

Except as changed by the terms of this opinion, the judgment of the trial court is affirmed. Costs on appeal are taxed against the appellees, Dean Mark Givler and Alma Givler.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Don T. McMurray, J.


_____
William H. Inman, Sr.J.