IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 1, 2012 Session

## SANDRA K. WILLIAMS v. RONNIE LLOYD WILLIAMS

**Appeal from the Circuit Court for Claiborne County**
**No. 8896     Hon. Robert M. Estep, Judge**

---

**No. E2011-00768-COA-R3-CV - Filed March 2, 2012**

---

This appeal concerns the post-divorce modification of alimony in futuro. Ronnie Lloyd Williams ("Husband") sought a reduction in his alimony obligation owed to Sandra K. Williams ("Wife"). Husband alleged that Wife's income had increased since the divorce, resulting in an unanticipated substantial and material change in circumstances. Following a hearing, the trial court reduced Husband's alimony obligation from $750 per month to $500 per month. Wife appeals. We reverse the decision of the trial court, vacate the trial court's judgment and terminate Husband's alimony obligation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Johnny V. Dunaway, LaFollette, Tennessee, for the appellant, Sandra K. Williams.

David H. Stanifer and Lindsey C. Cadle, Tazewell, Tennessee, for the appellee, Ronnie Lloyd Williams.

### OPINION

### I. BACKGROUND

Husband and Wife were divorced on September 21, 2004. The parties had two children during the marriage, one of which was still a minor at the time of the divorce. The trial court designated Husband as the primary residential parent of the minor child and

granted Wife reasonable visitation. The trial court divided the marital assets and denied Wife's request for alimony. Wife appealed to this court, raising numerous issues, one of which included the trial court's denial of alimony. On appeal, this court directed the trial court to award alimony in futuro in the amount of $750 per month. In so holding, this court stated,

> This was a marriage of long duration (twenty-eight years), and from the record it appears that Husband's adultery was the predominant reason for the divorce. While both parties apparently have good job security-Wife is a tenured elementary school teacher and Husband is employed in a supervisory position with an employer for whom he has worked approximately thirty years-there is great disparity between their levels of income with Husband making $75,000.00 to $76,000.00 per year and Wife making between $30,000.00 and $31,000.00 per year. Further, Husband testified that, for the nominal amount of $14.00 per week, his employer provides him with a vehicle which it insures and maintains and for which it supplies gasoline. Husband testified that he pays monthly rent in the amount of $475.00 and, of course, he will incur normal daily living expenses. However, given his annual salary, it is clear that Husband will have a substantial amount of funds remaining each month after payment of necessary expenses. By comparison, a statement submitted by Wife shows that she incurs total monthly expenses of $4,056.87 which must be paid out of a net income of only $1,898.00. We recognize from testimony of Wife that some of these expenses are slightly inflated and include a mortgage debt of $290.37 which was to be paid in full the month following trial. However, even if the monthly expense total is discounted by $500.00, it is evident that Wife's monthly income is markedly inadequate to pay her expenses. Based upon our review of the record, it is our determination that Wife has demonstrated a need for alimony and Husband has the ability to pay alimony.

*Williams v. Williams*, No. E2004-02439-COA-R3-CV, 2005 WL 2205913, at *14 (Tenn. Ct. App. Sept. 12, 2005) ("Williams I"). In determining that an award of alimony in futuro was preferable to the other types of alimony, this court opined,

> As we have stated, the legislature has indicated its preference that, whenever possible, a spouse be rehabilitated by a grant of rehabilitative alimony. In this case, however, we do not find that rehabilitation is a viable alternative. Wife was forty-six years of age at the time of trial. She currently holds a bachelors degree in education and a secretarial degree. Should she remain in her chosen field of elementary education, there is no proof that an advanced degree would

result in a significant increase in her level of income. If, on the other hand, she were to endeavor to obtain education or training in a different field of employment she would find herself, at the age of approximately fifty, competing for jobs in which she has had no prior experience.

*Id.* In compliance with this court's order in 2005, Husband submitted alimony payments to Wife for approximately four and a half years. On February 24, 2010, Husband petitioned for modification of the alimony obligation, alleging that there had been "an unanticipated material change of circumstances justifying modification of said alimony." Husband stated that Wife had "received a substantial promotion" and that the relative "earnings and expenses of the parties" justified modification of the award.

A hearing was held before the trial court in which Wife and Husband testified. Wife, who was 53 years old, stated that she was a sixth grade teacher for the Claiborne County Board of Education at the time of the divorce in 2004. She admitted that in 2004, her income was approximately $31,000 per year, that in 2009, her income had increased to approximately $46,000 per year, and that in 2010, her income had increased to approximately $64,000 per year when she became principal of a middle school. She explained that she worked almost double the hours in her new position as principal and that she incurred student loans to achieve the credentials in order to qualify for the position. She earned a master's degree, an education specialist degree, and a library media specialist certification. She related that she began the pursuit of her advanced education in 2004 or 2005 and that she had no intention of attaining any future education beyond that which she had already attained. She said that she did not have any training or experience that would allow her to work outside the school system. She stated that her position as principal was not tenured and that she was under contract that was subject to renewal each year. She opined that her health had declined since the divorce and that she had a "head tremor and hand tremor."

Wife recalled that at the time of the divorce, her expenses totaled $4,056.87 per month. She presented a current list of expenses, totaling $4,897.93 per month. Included in the list were three student loan payments, totaling $443.10; a monthly payment to Dunaway Law of $250, and three mortgage payments. She related that the three mortgage payments included a $344.79 payment for the original mortgage on the marital home, a $717.65 payment for a second mortgage she incurred to pay her legal fees from the divorce, and a $450.00 payment for a mortgage on land she purchased after the divorce. She explained that she purchased the land in order to build a smaller home. She said that she hoped to sell the marital home at some point in the near future. She testified that the $250 payment to Dunaway Law was payment for the appeal of the divorce. She stated that the payment represented a contingency agreement that if she received alimony, she would submit a

percentage of that award to her attorney as his fee. She said that the percentage fee also covered his representation for "as long as the alimony continue[d]."

Relative to her life after the divorce, Wife admitted that she had been dating Robert Brinegar. She said that they had stayed overnight together but that they each maintained their own residence and paid their own bills. She recalled that they did not have a "particular arrangement" but that they spent most weekends together.

Husband testified that his job as an area supervisor for Powell Valley Electric had not changed since the divorce but that his income had increased from approximately $75,000 per year to approximately $105,812 in 2009 and $101,451 in 2010. He explained that he was a salaried employee but that he received additional payments for working at other systems during storms. He related that he received more income in 2009 than in 2010 because of storm-related work he completed for other systems. He said that he did not have a contract and that his employment could be terminated at any moment. He opined that his health had declined since the divorce and related that he did not have any post-secondary education.

Husband admitted that he did not have a mortgage payment but stated that he helped pay a mortgage that was not in his name. He also admitted that he had a 120-acre farm, three vehicles, a motorcycle, approximately $842,000 in a 401(k) account, and approximately $50,203 in a Putnam Individual Retirement Account. He recalled that his employer also supplied him with a vehicle for his use. He said that he did not have any significant debt but that his name was listed on several of his current wife's loans.

Following the hearing, the trial court reduced Husband's alimony obligation from $750 per month to $500 per month. In so holding, the trial court noted that Wife and Husband had both increased their income. The court stated that Wife had increased her income by approximately $2,000 per month, representing increased monthly expenses of $800 and an increased income of $2,800 per month. The court found that the law did not support termination of the support obligation but that "based upon the changes" it was a "proper case to decrease the amount of alimony." This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.

Raised by Wife, whether the trial court erred in modifying Husband's alimony obligation.

-4-

B.

Raised by Husband, whether the trial court erred in failing to modify Husband's alimony obligation from $750.00, to zero.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d).  The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

"[M]odification of a spousal support award is 'factually driven and calls for a careful balancing of numerous factors.'" *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010) (quoting *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)).  "Generally, the trial court's decision on whether to modify spousal support is not altered on appeal unless the trial court abused its discretion." *Id.* (citing *Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999)).  "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).  If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).  "Consequently, when reviewing . . . an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011) (citations omitted).

## IV.  DISCUSSION

### A & B

We will consider and discuss both issues raised together.

Wife contends that her increased income was not a substantial and material change in circumstances because it was reasonably foreseeable that her income would increase. She argues that the court abused its discretion in failing to apply the factors set forth in Tennessee Code Annotated section 36-5-121 prior to modifying the alimony obligation.

Husband responds that as a result of Wife's increased income, the court should have eliminated the alimony obligation altogether instead of merely reducing the obligation. He asserts that her decision to return to school to advance her degree and qualify for additional income and an advanced position in her field was unforseen.

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th edition, as

> [a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced. Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. The type of alimony that is at issue in this case, alimony in futuro, is a long term form of spousal support that is typically awarded when a spouse is economically disadvantaged and rehabilitation is not feasible,

> meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1). This type of alimony is awarded on a "long term basis or until death or remarriage of the recipient" spouse. Tenn. Code Ann. § 36-5-121(f)(1).

Awards of alimony in futuro "remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A); *see also Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991). "It is not sufficient to simply show a change of circumstances." *Bowman*, 836 S.W.2d at 568. Instead, "[t]he change must be substantial and material." *Id.* "[A] change in circumstances is considered to be 'substantial' when it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728 (citing *Bowman*, 836 S.W.2d at 568). A change is not material if the change was "contemplated by the parties at the time

of the divorce." *Wright v. Quillen*, 83 S.W.3d 768, 772 (Tenn. Ct. App. 2002). "A substantial and material change in circumstances does not automatically entitle the petitioner to a modification." *Id.* at 773. Rather, "the petitioning party must [also] demonstrate that a modification of the award is justified." *Id.*

"Modification based on [an] increase[d income] is proper only where the initial alimony award was based on a presumption that the recipient would not continue to increase his [or] her income through the pursuit of his [or] her career." *Id.* at 774 (citing *McCarty v. McCarty*, 863 S.W.2d 716, 720 (Tenn. Ct. App. 1992)). "Whether such an increase in income constitutes a substantial and material change is a question of whether it was 'sufficiently foreseeable.'" *Id.* (quoting *McCarty*, 863 S.W.2d at 720).

The change at issue here, Wife's increased income, was substantial because it significantly affected Wife's need for support. Indeed, Wife doubled her income without a significant increase in her expenses. While it was foreseeable that Wife would receive periodic standard of living increases in her income and general increases based upon experience, it was not sufficiently foreseeable that Wife would return to school and advance her education, resulting in her qualification for a position meriting an income of $64,000 per year. As evidenced by this court's opinion in *Williams I*, Wife's advancement of her education and ability to increase her income based upon that education was not contemplated by the parties at the time of the divorce. If it had been foreseeable, this court would have awarded rehabilitative alimony instead of alimony in futuro. *See Williams*, 2005 WL 2205913, at *14 ("As we have stated, the legislature has indicated its preference that, whenever possible, a spouse be rehabilitated by a grant of rehabilitative alimony. In this case, however, we do not find that rehabilitation is a viable alternative."). Wife is to be commended for her advancement in education and qualification for an advanced position in her field. However, such an increased income based upon that advancement was unforeseeable and resulted in a substantial and material change in circumstances, meriting review of the alimony award.

"Having found a substantial and material change in circumstances, the next inquiry is what modification, if any, should be made to the support award." *Bogan*, 60 S.W.3d at 732. In determining whether modification is appropriate, "courts should consider, where relevant to modification, many of the same factors in section [36-5-121(i)] that were used to grant the original support award." *Id.* These factors include,

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). "[T]he two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support." *Bogan*, 60 S.W.3d at 730 (citing *Givler v. Givler*, 964 S.W.2d 902, 906 (Tenn. Ct. App. 1997)). "[W]hen deciding whether

to *modify* a support award, the need of the receiving spouse cannot be the single-most dominant factor, as a substantial and material change in circumstances demands respect for other considerations." *Id.* "While the need of the receiving spouse remains an important consideration in modification cases, the ability of the obligor to provide support must be given at least equal consideration." *Id.*

The trial court did not discuss the statutory factors other than the fact that Husband had the ability to continue providing support and that Wife's need, while lessened, had not entirely diminished as evidenced by her expense report. Indeed, most of the other factors listed were not relevant to modification in this case. Both parties maintained significant financial resources and assets from the divorce that had not changed at the time the request for modification was made. Both parties had advanced in age and had experienced health problems that could later affect their relative incomes. However, Wife had increased her education and potential earning capacity since the time of the divorce. Indeed, Wife, unlike Husband, was qualified for employment that she was not qualified for at the time of the divorce, evidencing an increase in her potential earning capacity. With these considerations in mind, we conclude that the trial court did not err in reducing the alimony obligation.

We must now determine whether the trial court erred in setting the amount of the reduction. Husband notes that Wife forfeits $250 of the alimony payments to her attorney each month and that Wife's second mortgage was not a proper expense for the trial court's consideration because it was incurred to pay trial attorney fees. The reasonableness of the attorney fee and the circumstances under which the fee was arranged are not proper issues before this court on appeal. However, we reject the $250 fee because it was contingent upon the award of alimony. If the court terminated the alimony obligation, Wife would not have to pay the fee. Unlike the $250 fee, the second mortgage was not a debt that was contingent on the award of alimony. We believe that debt was an expense that should have been considered by the court in determining the amount of the modification based upon Wife's continued need for support.

Citing *Gonsewski*, Husband contends that elimination of the alimony obligation was warranted because Wife had been rehabilitated and was no longer relatively economically disadvantaged. As discussed above, courts are instructed to consider the factors relevant to the setting of an initial award of alimony in determining whether a modification of alimony is justified. *Bogan*, 60 S.W.3d at 732. Given that instruction, it follows that courts should also consider whether the policy reasons meriting the type of alimony awarded in each particular case were still present at the time of the request for modification. Here, Wife received alimony in futuro, which "should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary." *Gonsewski*, 350 S.W.3d at 110. In this case, Wife's need for alimony had lessened beyond that which was

ever contemplated at the time of the first appeal.  She had been economically rehabilitated, was self-sufficient, and was no longer in need of long-term support, given her increased income, education, and earning potential.  *See generally Crabtree v. Crabtree*, 350 S.W.3d 356, 360 (Tenn. 2000) (finding that an award of alimony in futuro was not justified where wife's rehabilitation was feasible); *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998) ("The purpose of long-term spousal support . . . is to provide support to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency.").  After a careful review of the evidence, we conclude that the support obligation should have been terminated because an award of alimony in futuro was no longer appropriate.  Accordingly, we reverse the decision of the trial court, vacate the trial court's judgment  and terminate the support obligation effective March 1, 2012.

## V.  CONCLUSION

The judgment of the trial court is vacated and the alimony obligation is terminated. The case is remanded for such further proceedings as may be necessary.  Costs of the appeal are taxed to the appellant, Sandra K. Williams.

_____
JOHN W. McCLARTY, JUDGE