IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 17, 2019

**STATE OF TENNESSEE v. JERRY A. THIGPEN**

**Appeal from the Criminal Court for Trousdale County**
**No. 2016-CR-062   Brody N. Kane, Judge**

_____

**No. M2018-00118-CCA-R3-CD**

_____

The Defendant, Jerry A. Thigpen, was found in contempt of court for four separate acts of publishing online certain materials related to his underlying charge of misdemeanor assault, and he received an aggregate sentence of forty days in jail, with two days suspended. The Defendant appeals, asserting that the evidence was insufficient to support a finding of guilt, that he did not have adequate notice of the charges, that the trial court erred in admitting evidence, that he received ineffective assistance of counsel at the hearing, and that the trial court was obligated to recuse itself. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Jerry Alan Thigpen, Hartsville, Tennessee, pro se (on appeal), and Harry Christensen, Lebanon, Tennessee (at hearing).

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Jack Bare and Ian Bratten, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

On December 5, 2016, the Defendant was indicted for misdemeanor assault resulting from a June 6, 2016, altercation with the tax assessor over the Defendant's

desire to film a meeting of the tax board. This altercation was recorded on the Defendant's own camera and apparently resulted in the Defendant's conviction after the events at issue in this appeal. The Defendant at first represented himself, and he inundated the court with various filings, only some of which were pertinent to his pending criminal matter. In February 2017, the Defendant issued approximately forty subpoenas to various persons, including members of the December 5, 2016, grand jury. On February 23, 2017, on the State's motion, the trial court entered a protective order mandating that all discovery materials be filed under seal and prohibiting any party from linking or uploading the materials to any internet or social media site. The order noted that any violation would be punished as contempt of court.

On October 16, 2017, the State filed a petition asking the trial court to find the Defendant in criminal contempt. The petition recited that the Defendant had uploaded prohibited documents, including video links, to the Hartsville "Topix" forum. The State's petition was accompanied by a printout of the postings allegedly in violation of the order and by a printout of certain links contained in the postings. The Defendant, who initially represented himself, was represented by counsel at the time the petition was filed. His attorney was permitted to withdraw, and trial counsel was appointed the same day, October 16, 2017. The Defendant was also served with a summons.

On December 12, 2017, the trial court held a hearing on the contempt matter. At the hearing, the Defendant filed a "Notice of Ineffective Counsel." In the "notice," the Defendant alleged various failures on the part of counsel, primarily having to do with the investigation and prosecution of the underlying matter but also asserting that counsel should have moved for a bill of particulars on the contempt matter and that he should have moved for the trial court's recusal.

At the hearing, the trial court denied a motion to continue, finding that trial counsel, the prosecution, and the trial court had held a telephone conference in November and "did discuss at length during that teleconference the basis for the State's petition" and ultimately concluded that trial counsel would have adequate time to prepare for the contempt matter. The Defendant requested a hearing on his claim of ineffective assistance of counsel, and the trial court replied, "I'm not going to listen to that today. You've got an able lawyer in sitting next to you."

Mr. William Sharer, an investigator for the prosecution, testified that he had been acquainted with the Defendant since 2013 and was familiar both with the Defendant's patterns of written and oral communication and with the Defendant's recurring grievances. In 2014, Mr. Sharer began to regularly review the Hartsville Topix online forum because the Defendant frequently posted there using various usernames.

Mr. Sharer described the Defendant's writing style by saying the Defendant "tries to talk like he's a lawyer." He noted that the Defendant used the word "patently" repeatedly both in writing and conversation. The State introduced a stack of emails which Mr. Sharer had received from the Defendant and which illustrated the Defendant's writing style and pet grievances. Mr. Sharer testified that the Defendant frequently complained about alleged corruption in the county, an improperly impaneled grand jury, and public records requests.

Mr. Sharer analyzed numerous posts which he believed were made by the Defendant. These posts, made under various user names, frequently linked to documents on Google Drive which included unsigned filings evidently drafted by the Defendant and bearing the Defendant's case numbers. One username which Mr. Sharer believed was used by the Defendant was "3one7-cv-00919," which was the case number of a civil case filed in federal court by the Defendant against over forty individuals. *See Jerry Alan Thigpen v. Bordy Kane, et al.*, No. 3:17-CV-00919, 2017 WL 3868282, at *1 (M.D. Tenn. Sept. 5, 2017). Common topics addressed by the posts were alleged local corruption, particularly on the part of the tax assessor, the district attorney general, and the trial judge, and complaints about the members of the grand jury.

On October 11, 2017, an individual using the username "Do Tell" wrote, "I'm interested and easy to find. My name is on the papers the links in post #9 ….or, just take a look at these papers." Post #9, referenced by "Do Tell," contained a link to an order in case 2014-CR-51156 and bore the Defendant's name. "[T]hese papers," referenced by "Do Tell," consisted of links to Google Drive documents within the post. One link was to a document which contained a list of grand jurors with the name of a juror whom the Defendant had repeatedly challenged highlighted. Another file, entitled "12-5-16 GRAND JURERS [sic]," included a list of the grand jurors who indicted the Defendant with various personal information such as addresses, email addresses, some telephone numbers, and some dates of birth. There were also notations on this document purporting to reveal personal relationships between the grand jurors and other county citizens. A third file posted by "Do Tell" consisted of an audio file of an interview between the Defendant and the County Judicial Commissioner. This audio file was again posted by someone using the username "Recusal City" on October 12, 2017.

The audio file contained an interview conducted between the Defendant and Commissioner shortly after the assault, and in the file, the Commissioner stated he was considering getting a warrant for both the tax assessor and the Defendant for engaging in the altercation. The prosecution introduced the Defendant's request in discovery for information regarding the grand jurors who indicted him.

Prior to the Defendant's offering testimony, defense counsel moved for the trial court's recusal under Tennessee Rule of Criminal Procedure 42 based on the exhibits introduced by the State, which contained online posts critical of the trial judge. The trial judge stated, "I don't think anything has been said that hasn't been said in open court. I don't take any issue with what [the Defendant] thinks." The motion to recuse was denied.

The Defendant denied violating the protective order. He questioned the consistency of the items filed under seal by the State with the items he received in discovery. He stated that the some of the items in discovery were public records. He also asserted that the State did not provide him with the interview with the Commissioner but that he instead received it in October or November 2017, "on a chip on the windshield of [his] car." He interpreted the Commissioner to be saying that he had a warrant for the tax assessor's arrest and that there was no reason to arrest the Defendant. Asked if he wrote certain postings related to the case, he stated he did not "publish" them to the internet. Asked if he used as a username the case number of his civil lawsuit, he stated he was "not aware that [he had] using dashes" but that he possibly used it without dashes. He acknowledged that the topics of the posts were consistent with conversations he had had, but he denied making the posts. He denied posting the annotated grand juror list but admitted it was part of his "investigation," and he testified it was a document present on his hard drive.

During the Defendant's testimony, he again tried to raise the issue of ineffective assistance of counsel, and the trial court again refused to consider the issue, stating, "That's not my decision to make today…. We're here on a contempt action." The Defendant then urged the trial court to reconsider recusal, noting that there was "additional stuff on Topix" which the trial court had not reviewed "because I believe if you had heard those things in court you certainly would have found me in contempt and put me in jail a long time ago." He also noted he had filed complaints against the court and his attorney with the Board of Professional Responsibility. The trial judge stated that he was not influenced by anything the Defendant had posted about him online.

The prosecution argued that the Defendant's interview with the Commissioner was supplied to him by the State and that he posted it twice, once under the name "Do Tell" and once under the name "Recusal City," to support two counts of contempt. The prosecution argued that the Defendant posted a list of grand jurors twice under the username "Do Tell." One of these documents contained the grand juror's names along with addresses, email addresses, some telephone numbers, some dates of birth, and what appeared to be notes regarding purported familial relationships which the Defendant had, in other filings, argued disqualified the jurors. The prosecution noted that the list of grand jurors and some personal information was requested in discovery and eventually

supplied to the Defendant. The defense argued that the prosecution did not establish beyond a reasonable doubt that the Defendant was responsible for the postings.

The trial court found the Defendant guilty of four counts of criminal contempt, relying on Tennessee Code Annotated section 29-9-102(3) and (4). The trial court's order attached as an exhibit and incorporated its oral findings on the contempt matter. The trial court found that the recorded interview with the Commissioner was part of the discovery provided by the State and that it had been posted twice to support two counts of contempt. The other two counts consisted of posting the grand juror lists. The court found that the Defendant's misbehavior, disobedience, and interference was willful and that the Defendant's actions had interfered with the trial court's ability to administer justice. The court noted that the posting of the grand jurors' personal information would have a potentially deleterious effect on the jury pool available to try the Defendant, and the court found that the Defendant's intent in posting the list was "to attempt to taint the pool" as well as to intimidate or harass the jurors. The court noted that on February 21, 2017, it had concluded the Defendant was in contempt of its order to cease ex parte communications with the court but had ultimately not made the finding of contempt or ordered confinement. The trial court found that the posts on Topix matched the Defendant's writing style and list of grievances, that no one else would have posted about these subjects, and that the court felt "no doubt" that the Defendant made the posts. The trial court found the Defendant was dishonest in his testimony, including the testimony that he did not receive the recording in question from the State. The court ordered him to serve ten days in jail for each count of contempt with two days suspended, for an effective sentence of thirty-eight days in jail. The Defendant filed a notice of appeal on January 18, 2018, and the trial court's written order was filed January 19, 2018. On February 9, 2018, defense counsel was permitted to withdraw, and the public defender was ordered to represent the Defendant at his trial. Because both defense counsel and the public defender submitted filings in this court stating that any appeal of the contempt matter was outside the scope of their representation, this court remanded for the trial court to determine the Defendant's representation on appeal. By that point, the Defendant had been convicted, and his relationship with the public defender's office had broken down. The Defendant indicated to the trial court that he would either hire new counsel or represent himself. The trial court ordered the public defender's office to assist the Defendant with the preparation of the record for the instant appeal. The Defendant is currently proceeding pro se. This court denied a motion to consolidate this case with the appeal of the Defendant's misdemeanor assault conviction.

**ANALYSIS**

The Defendant has submitted voluminous filings in this matter addressing a host of matters not relevant to the instant appeal, including allegedly disqualified members of

the grand jury, a separate criminal matter in which the Defendant was the victim, alleged misconduct by public officials, alleged racially charged remarks by the prosecution, and alleged alterations of the official court transcripts. We note that these issues are outside the scope of our review. As relevant to this appeal, the Defendant asserts that the evidence is insufficient to support the court's finding of criminal contempt, that he did not have adequate notice of the charges, that the trial court erred in admitting evidence, that the Defendant received ineffective assistance of counsel at the hearing, and that the trial court erred by refusing to recuse itself.

The State urges us to conclude that all of the Defendant's issues have been waived based on his brief's failure to conform to Tennessee Rule of Appellate Procedure 27(a) and Rule 10(b) of the Rules of the Court of Criminal Appeals. Generally, "pro se litigants … are not held to the same strict drafting standards as attorneys and … pro se pleadings should be more liberally construed." *State v. James Ray Walker*, No. W2012-01593-CCA-R3-CD, 2013 WL 3968804, at *3 (Tenn. Crim. App. Aug. 1, 2013). However, when a pro se litigant fails to "even remotely" satisfy these Rules, this court will consider the issues waived. *Id.* In other words, the rules should not be bent until broken. *James Polk v. State*, No. M2006-02487-CCA-R3-PC, 2007 WL 4232940, at *3 (Tenn. Crim. App. Dec. 3, 2007).

Although we agree with the State that the brief fails in many material ways to comply with Tennessee Rule of Appellate Procedure 27(a) and Rule 10(b) of the Rules of the Court of Criminal Appeals and that the bulk of the brief is irrelevant and indecipherable, we nevertheless address the issues which are raised and pertinent to the contempt hearing. *Compare James Polk*, 2007 WL 4232940, at *3 (noting that while the court "could" choose to treat the issues as waived based on the deficient brief, the record supported the lower court's ruling), *with James Ray Walker*, 2013 WL 3968804, at *3 (concluding that the pro se litigant waived all issues except sufficiency of the evidence and sentencing based on failure to conform to the Rules), *and State v. Shelton Hall*, No. M2012-01622-CCA-R3-CD, 2013 WL 1200266, at *4 (Tenn. Crim. App. Mar. 26, 2013) (concluding that all issues were waived due to deficient briefs and failure to include transcripts).

## I. Sufficiency of the Evidence

The Defendant asserts that there was insufficient evidence to support the four counts of contempt. This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). "We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the

defendant guilty beyond a reasonable doubt." *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277. "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

"An act of contempt is a wilful or intentional act that offends the court and its administration of justice." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). A court may punish criminal contempt for acts including:

> (3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

> (4) Abuse of, or unlawful interference with, the process or proceedings of the court;

T.C.A. § 29-9-102. "[A]n alleged criminal contemnor, like a person charged with a criminal offense, is presumed to be innocent, must be proven guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." *Baker v. State*, 417 S.W.3d 428, 436 (Tenn. 2013). Under the statute, a court must find "the misbehavior, disobedience, resistance, or interference to be wilful." *Ahern*, 15 S.W.3d at 79.

The Defendant argues that there was not sufficient evidence to find him guilty beyond a reasonable doubt of contempt because the prosecution did not establish the IP address of the person posting the materials. He argues that someone could have posted the materials in an effort to deceptively implicate him. However, we conclude that a rational trier of fact could have found that the Defendant was the person who posted the materials. The usernames "Do Tell" and "Recusal City" posted the interview which the

trial court found had been provided in discovery and was under the protective order.  This interview was not publicly available.  Likewise, the username "Do Tell" posted the lists of grand jurors with personal identifying information.  The Defendant acknowledged that the list of grand jurors with personal information was a document which he had created on his computer, although he denied publishing it on the internet.  The evidence demonstrated that the Defendant had a unique writing style and a recurring list of grievances, and the posts at issue demonstrated both his unique style and his chronic complaints.  Furthermore, the poster "Do Tell" stated that his name could be found in link from a previous post, which bore the Defendant's name and concerned other litigation in which he was involved.  The trial court found that the Defendant had acted willfully in posting the material which he knew was under a protective order and that he intended to interfere with the proceedings of the court by intimidating and harassing the grand jurors in an effort to taint the jury pool for his trial.  A rational trier of fact could have found that the Defendant was the person who posted the material which resulted in the finding of contempt.

The Defendant also argues, in the alternative, that the nature of the contempt was civil and that he should have been given the opportunity to avoid punishment by removing the posts he made.  Civil contempt occurs when the contemnor refuses to comply with a court order and punishment is imposed for the benefit of a private party. *Bryan v. Leach*, 85 S.W.3d 136, 158 (Tenn. Ct. App. 2001) (citing *Givler v. Givler*, 964 S.W.2d 902, 909 (Tenn. Ct. App. 1997)).  If imprisonment is ordered, the contemnor may secure his or her release by simply complying with the court's order. *Id.* (citing *Black*, 938 S.W.2d at 398).  Criminal contempt is designed "'to preserve the power and vindicate the dignity and authority of the law and the court as an organ of society.'" *Baker*, 417 S.W.3d at 436 (quoting *State v. Beeler*, 387 S.W.3d 511, 520 (Tenn. 2012)).  Civil and criminal contempt are not distinguished by the type of punishment, but rather by its character and purpose. *Baker*, 417 S.W.3d at 435 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)).  Sanctions for criminal contempt are simply a punishment for prior misbehavior, "and persons imprisoned for criminal contempt cannot be freed by eventual compliance with the court's orders." *Long v. McAllister-Long*, 221 S.W.3d 1, 12-13 (Tenn. Ct. App. 2006).  Here, the trial court found that the Defendant willfully disobeyed its order in posting the materials online.  The punishment imposed was for the purpose of vindicating the authority of the court and to discipline the Defendant for his willful malfeasance; it was not for the purpose of forcing him to comply with an order or to benefit a private party.  Accordingly, the Defendant is mistaken in arguing that the nature of the contempt was civil and that he should have been permitted to remove the posts and thereby avoid the punishment.

## II. Notice

The Defendant next asserts that he was not given proper notice of the contempt charges. However, trial counsel did not challenge the adequacy of notice at the hearing. Issues raised for the first time on appeal are generally waived. *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996). Accordingly, the Defendant is not entitled to relief.

## III. Expert Testimony

The Defendant maintains that Mr. Sharer improperly testified as an expert witness. Trial counsel did not object to Mr. Sharer's testimony on the basis that he was not an expert witness, and the testimony consisted of authentication. We conclude that the issue is waived for failure to object at trial. *See State v. Tedarrius Myles*, No. E2016-01478-CCA-R3-CD, 2017 WL 2954690, at *7 (Tenn. Crim. App. July 11, 2017) ("When the defendant fails to object to expert testimony offered by a lay witness, the defendant is not entitled to plenary review.").

## IV. Ineffective Assistance of Counsel

The Defendant asserts on appeal that the trial court erred in not holding a hearing on the issue of whether he received the ineffective assistance of counsel at the contempt hearing based on trial counsel's failure to file for a bill of particulars, to adequately investigate the charges, and to bring to the trial court's attention a document in which the Defendant insulted the trial judge and which may have secured the judge's recusal. The State responds that the trial court did not abuse its discretion in refusing to hear the issue. We conclude that, because the Defendant was represented by counsel at the time he attempted to raise the issue pro se, the issue was not properly before the trial court, and the trial court did not err in refusing to hold a hearing.

While the Defendant initially proceeded pro se, he later completed an affidavit of indigency and was appointed counsel. Counsel moved to withdraw, and trial counsel was appointed as the Defendant's subsequent attorney on October 16, 2017, prior to the December 12, 2017, hearing. Trial counsel represented the Defendant at the hearing, when the Defendant twice attempted to raise issues with his counsel's performance and the trial court twice refused to address this issue. The trial court noted on both occasions that any issue regarding counsel's performance was not before the court and that it would not make a ruling on the issue. At the time the Defendant was attempting to raise this issue and file a "notice" regarding it pro se, he was represented by counsel, and the Defendant's pro se filings were not properly before the court. *State v. Muse*, 637 S.W.2d 468, 470 (Tenn. Crim. App. 1982) (the defendant could not file pro se motions while

simultaneously represented by counsel); *see also State v. Smith*, 492 S.W.3d 224, 242 (Tenn. 2016) ("[A] defendant may not proceed pro se while simultaneously represented by counsel"); *State v. Burkhart*, 541 S.W.2d 365, 368 (Tenn. 1976) (a defendant "must make a choice between self-representation and representation by counsel"). Counsel would have had a conflict of interest raising as an issue his own allegedly deficient performance. *Frazier v. State*, 303 S.W.3d 674, 683 (Tenn. 2010) (citing *Velarde v. United States*, 972 F.2d 826, 827 (7th Cir.1992) for the proposition that trial counsel cannot be expected to challenge his own effectiveness). We conclude that the trial court did not err in refusing to hold a hearing on the issue of ineffective assistance of counsel, which was not at the time properly before the court. Insofar as the Defendant raises the issue of ineffective assistance of counsel on appeal, this issue, not having been litigated in the trial court, may not be raised for the first time on appeal. *See State v. Howard*, 504 S.W.3d 260, 277 (Tenn. 2016).

## V. Recusal

The Defendant argues that the trial court erred in not recusing itself based on unflattering material posted by the Defendant on the Topix forum. The State responds that the Defendant has not demonstrated a basis for recusal. We conclude that the Defendant did not establish that recusal was required under Tennessee Rule of Criminal Procedure 42, and he is not entitled to relief.

During the contempt hearing, trial counsel made a motion for the judge's recusal under Tennessee Rule of Criminal Procedure 42, noting that some of the language in the online postings which had been introduced at the hearing was critical of the judge personally. The judge noted that the posts were not materially different from the things the Defendant had said in court and stated, "I don't take any issue with what [the Defendant] thinks." When the Defendant later made a pro se motion for recusal, the trial judge observed that the Defendant may have been attempting to secure his recusal by posting inflammatory comments and then concluded, "but I don't care about that stuff." The trial court noted that the subject of the hearing was criminal contempt unrelated to the personal postings about the judge.

Under Tennessee Rule of Criminal Procedure 42(b)(4), "[w]hen the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing, except with the alleged contemner's consent." Trial counsel moved for recusal under this provision on the basis that the evidence introduced to establish criminal contempt also contained posts evidently made by the Defendant which criticized the trial judge personally. The trial judge denied the motion, observing that the focus of the hearing was regarding the posting of the discovery materials and grand jury lists. Rule 42 "requires recusal only in those limited situations where the *charged*

- 10 -

conduct involves a personal criticism against or disrespect toward the particular judge presiding over the contempt proceedings," and "the violation of a valid court order … is not the type of conduct addressed by Rule 42." *Herrera v. Herrera*, 944 S.W.2d 379, 392 (Tenn. Ct. App. 1996) (emphasis added). We conclude that the trial court was correct in determining that the contempt charged in this case did not involve disrespect to or criticism of the judge personally and therefore did not disqualify the judge under Rule 42 from hearing the charge. Furthermore, the Defendant's act of publishing unflattering material regarding the judge and naming him with other defendants in a federal lawsuit does not by itself require recusal. *See State v. Antonio Freeman*, No. M2012-02691-CCA-10B-CD, 2013 WL 160664, at *4 (Tenn. Crim. App. Jan. 15, 2013) ("To hold otherwise would mean that a litigant could automatically disqualify a judge by the filing of a frivolous suit and would set a dangerous precedent inviting additional frivolous litigation, manipulation of the judicial system, and forum shopping."). The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgments.

_____

JOHN EVERETT WILLIAMS, PRESIDING JUDGE

- 11 -