Carlo Alejandro **GONZALEZ**,
Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–10–00478–CR.

Court of Appeals of Texas, Beaumont.

Submitted July 14, 2011.

Decided Aug. 24, 2011.

Eric Tayce Bond, Conroe, for appellant.

Brett Ligon, Dist. Atty., William J. Delmore III, Asst. Dist. Atty., Conroe, for state.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A jury found appellant Carlo Alejandro Gonzalez guilty of committing aggravated robbery, with an affirmative finding on use of a deadly weapon, and found that Gonzalez had been convicted of a prior felony. *See* Tex. Penal Code Ann. §§ 29.03(a)(2), 29.03(a)(3) (West 2011) (defining aggravated robbery to include exhibiting a deadly weapon or causing bodily injury to a person sixty-five years of age or older), § 12.42(c)(1) (West 2011) (increasing minimum sentence for first degree felony conviction to a term of fifteen years on showing the defendant was previously convicted of a felony). In his first issue, relying on the State's use of Tonya Swarthout's testimony during its case, Gonzalez contends the trial court should have provided the jury with an accomplice-witness instruction. In issue two, Gonzalez argues that his trial counsel rendered ineffective assistance because he failed to request that the trial court instruct the jury about accomplice-witness testimony. We affirm the trial court's judgment.

### Factual Background

The jury convicted Gonzalez of robbing Charles Wilson. During the trial, Wilson testified that he was at home on the eve-

ning of July 3, 2009, when he heard a car pull into his driveway. When Wilson went to his front porch, which was not lighted, he began talking with Swarthout, whom he knew. According to Wilson, Swarthout was accompanied by a man that he did not recognize. After retrieving his cell phone to allow Swarthout to place a call, Wilson bent over an ice chest to get a beer when the man with Swarthout began to hit him on the back of the head with a club. Then, the man began to choke Wilson, and the man asked: "Where is your money?" At that point, Swarthout ran out of Wilson's house carrying his pants. Swarthout left with the man that hit him with a club. Wilson stated he did not get a good look at the man who hit him because it was too dark outside, and he explained that he could not identify his attacker.

Swarthout, who was charged in a separate case with robbing Wilson that same evening, testified that Gonzalez was the man who hit Wilson with a club on the night the robbery occurred. Swarthout explained that she knew Wilson based on his friendship with her mother. After they met, Wilson occasionally gave her money. Swarthout explained that in return for her testimony against Gonzalez, the State had not promised her anything. According to Swarthout, she first met Gonzalez two days before the robbery. Swarthout spent the night of July 2 with Gonzalez at a motel in Houston. During the trial, Swarthout identified Gonzalez as the person who had rented the motel room the evening before the robbery. While with Gonzalez, Swarthout asked him to take her over to Wilson's residence so that she could borrow some money from him. When Swarthout and Wilson began talking on Wilson's porch, Gonzalez walked up. Swarthout explained that when Wilson bent over to get Gonzalez a beer from an ice chest, Gonzalez started hitting Wilson and asked where Wilson kept his money.

At that point, Swarthout ran inside Wilson's home, got Wilson's pants, and noticed that there was money in them. When they left Wilson's house, Gonzalez took her to Justin Trevathan's home. According to Swarthout, Trevathan loaned Gonzalez some clothes because they were covered in blood. After that, Trevathan accompanied Swarthout and Gonzalez to Houston. In Houston, Gonzalez dropped Swarthout and Trevathan off at a motel, and Trevathan rented a room. Swarthout also explained she had a history of drug use, that she and Gonzalez were high at the time they robbed Wilson, and that she intended to spend the money she got from Wilson on drugs.

The State also called Justin Trevathan to testify during its presentation of the case. Trevathan testified that on July 3, Swarthout came to his house with Gonzalez. Swarthout began talking about going and getting a man for putting her brother in prison, but Trevathan did not know the name of the person Swarthout intended to confront. Gonzalez and Swarthout left, and when they returned, Trevathan noticed that Gonzalez had on a "white shirt full of blood," and Gonzalez asked him if he could borrow some clothes. According to Trevathan, he assumed that the blood on Gonzalez's shirt probably came from the man that Swarthout had been talking about earlier because Gonzalez did not have any noticeable cuts or marks on his face. Because Gonzalez was shaking badly, Trevathan explained that he asked Gonzalez whether he needed to go to the hospital. Trevathan drove Gonzalez's pickup to a gas station, and then Gonzalez drove his pickup to Houston, dropping Trevathan and Swarthout off at a motel. Swarthout later told Trevathan that she had taken money from Wilson.

Trevathan's mother, Robin Trevathan, recalled that while she was home on July

3, 2009, Swarthout introduced a Hispanic male named "Carlo" to her. She also recalled seeing, from a distance, something on Gonzalez's shirt that she could not identify. She then saw Gonzalez take off his shirt and put on another shirt that he had removed from behind the seat of his pickup.

The jury also heard the testimony from a lab analyst that performed DNA testing on some of the evidence gathered in connection with the case. The lab analyst testified that from her lab's results, Gonzalez was included as a possible contributor to the DNA profiles that had been generated from material on swabs that were connected to both Gonzalez and to the club. With respect to the DNA material that had been gathered from the swab associated with the club, the DNA analyst testified: "All I can say is that [Gonzalez is] included as a possible contributor[.]"

### Accomplice–Witness Instruction

■ "An accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state." *Smith v. State*, 332 S.W.3d 425, 439 (Tex.Crim.App.2011). In connection with this appeal, the State concedes that Swarthout was an accomplice witness as a matter of law. Nevertheless, despite Swarthout's status as an accomplice witness, the trial court did not instruct the jury that, under Texas law, accomplice-witness testimony must be corroborated. *See* Tex.Code.Crim. Proc. Ann. art. 38.14 (West 2005).[1] The Texas Court of Criminal Appeals recently held that "[w]hen the evidence clearly shows (i.e., there is no doubt) that a witness is an accomplice as a matter of law, the trial judge must instruct

the jury accordingly." *Smith*, 332 S.W.3d at 439. Because Swarthout was an accomplice as a matter of law, we conclude that the trial court erred by failing to provide the jury with an accomplice-witness instruction.

■ Because the trial court committed error, we evaluate the record to determine whether the defendant was harmed. In criminal cases, article 36.19 of the Texas Code of Criminal Procedure provides that charge error will not result in a reversal "unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." Tex.Code Crim. Proc. Ann. art. 36.19 (West 2006). In this case, Gonzalez failed to object when the trial court omitted the accomplice-witness instruction; therefore, on appeal, Gonzalez is required to show that he suffered egregious harm from the error to obtain a reversal. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex.Crim.App.2002) ("The difference in harm standards [for preserved and unpreserved error] impacts how strong the non-accomplice evidence must be for the error in omitting an accomplice witness instruction to be considered harmless."); *Saunders v. State*, 817 S.W.2d 688, 690 (Tex.Crim.App.1991) (applying egregious harm analysis to unpreserved charge error and noting that the approach to assessing the impact of the harm is the same for error preserved by objection and unpreserved charge error); *Solis v. State*, 792 S.W.2d 95, 97 (Tex.Crim.App.1990) (applying egregious harm analysis to unpreserved error in not instructing the jury on accomplice-witness testimony). Egregious harm is generally defined as being such

---

1. "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code.Crim. Proc. Ann. art. 38.14 (West 2005).

harm that a defendant " 'has not had a fair and impartial trial[.]' " *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). However, in cases that involve complaints concerning the trial court's omission of accomplice-witness instructions, the review for harm focuses on whether "there was a substantial amount of non-accomplice evidence and whether the record reveals any rational basis on which the jury could have doubted or disregarded that evidence." *Davis v. State,* 278 S.W.3d 346, 353 (Tex. Crim.App.2009).

By its terms, article 38.14 of the Texas Code of Criminal Procedure requires that the accomplice's testimony be corroborated by other evidence tending to connect the defendant with the offense committed. *See* Tex.Code Crim. Proc. Ann. art 38.14. In *Smith,* the Texas Court of Criminal Appeals recently explained how to decide whether the non-accomplice evidence tends to connect the accused to the commission of the offense. 332 S.W.3d at 442–447. The Court of Criminal Appeals explained that the review on appeal is deferential to the jury's function as the factfinder, stating: "The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Id.* at 442. Further, the Court of Criminal Appeals made clear that if views of the evidence based on a jury's rational inferences conflicted, (i.e., one view that tended to connect the defendant to the offense and one that did not), the appeals court is to "defer to the factfinder's resolution of the evidence." *Id.*

Giving deference to the jury's resolution of the factual issues, we conclude that the non-accomplice evidence in Gonzalez's case tends to connect Gonzalez to the aggravated robbery committed upon Wilson. Trevathan's testimony established that Gonzalez was with Swarthout at Trevathan's home located in Splendora, Montgomery County, Texas, on the date of the robbery. Wilson testified that he considered his home to be located in Splendora. While at Trevathan's home, Trevathan heard Swarthout talk about getting a man, and when Gonzalez and Swarthout returned, Trevathan noticed that blood was present on Gonzalez's shirt, but he also noticed no apparent signs of Gonzalez having been injured. Gonzalez asked Trevathan to supply him with a change of clothes, and Trevathan and his mother saw Gonzalez change his shirt. In summary, there was substantial non-accomplice evidence establishing that Swarthout was with Gonzalez on the date of the robbery and circumstantially establishing that he was with Swarthout when Wilson was robbed. Finally, the evidence the jury considered includes the testimony of a DNA analyst that Gonzalez could not be excluded as a possible contributor to the DNA taken from a club that was identified as having been used in the robbery.

There is also no evidence that casts doubt on the testimony of Trevathan, his mother, or Wilson's testimony that Swarthout was one of the persons involved in the robbery. There were no alibi witnesses who testified that Gonzalez was somewhere else on July 3, no evidence in the record offering an innocent explanation for Gonzalez having had blood on his shirt during a period consistent with the inference that he had been involved in an altercation with someone, nor any evidence that some person other than Gonzalez was the person named Carlo introduced to Trevathan's mother on the date of the robbery.

Giving proper deference to the jury's role in making reasonable inferences from the evidence, we conclude that the cumulative force of the non-accomplice evidence tends to connect Gonzalez to the robbery.

*See Smith,* 332 S.W.3d at 447. Under the circumstances, Gonzalez's presence at Wilson's home on the date of the robbery is not merely an abstract theory, and, in our opinion, the circumstances taken as a whole constitute evidence that is sufficient to fulfill the corroborating testimony requirements of article 38.14. *See* Tex.Code Crim. Proc. Ann. art 38.14. Gonzalez's first issue is overruled.

### Ineffective Assistance of Counsel

In his second issue, Gonzalez argues that his trial counsel rendered ineffective assistance because counsel—in the face of Swarthout's involvement in the robbery—failed to request an accomplice-witness instruction. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate that trial counsel rendered ineffective assistance, Gonzalez must first show that the performance of counsel fell below an objective standard of reasonableness. *Id.* at 687, 104 S.Ct. 2052. In reviewing claims of ineffective assistance, there is a strong presumption that counsel's decisions were reasonable. *Id.* at 689, 104 S.Ct. 2052. With respect to the second *Strickland* requirement, when the claimed deficiency is the failure to object to the trial court's omission of an accomplice-witness instruction, the record is generally reviewed to determine whether "there was a substantial amount of non-accomplice evidence and whether the record reveals any rational basis on which the jury could have doubted or disregarded that evidence." *Davis,* 278 S.W.3d at 353; *see also Strickland,* 466 U.S. at 687, 692, 104 S.Ct. 2052 (setting forth the two-prong test for evaluating ineffective assistance claims).

On appeal, Gonzalez attempts to distinguish several cases where appeals courts concluded that the omission of accomplice-witness instructions was harmless where the testimony of witnesses, other than the accomplice witness, tended to connect the defendant to the crime. *See Patterson v. State,* 204 S.W.3d 852, 861 (Tex.App.-Corpus Christi 2006, pet. ref'd) (holding that failure to object was a " 'glaring error,' " but harmless) (citation omitted); *Henson v. State,* 915 S.W.2d 186, 197–98 (Tex.App.-Corpus Christi 1996, no pet.) (finding counsel's performance deficient but error harmless); *Shaw v. State,* 874 S.W.2d 115, 120–21 (Tex.App.-Austin 1994, pet. ref'd) (concluding that where the accomplice witness's testimony was brief, and the defendant was connected to the crime by virtue of the victim's testimony, the omission of the accomplice-witness instruction was determined to be harmless). Gonzalez also cites several cases where appeals courts concluded that defendants demonstrated they were harmed by the failure of the lawyers who represented them to have requested accomplice-witness instructions. *See Ex parte Zepeda,* 819 S.W.2d 874, 877 (Tex.Crim.App.1991) (granting writ of habeas corpus after concluding that trial counsel rendered ineffective assistance by failing to request an accomplice-witness instruction); *Hall v. State,* 161 S.W.3d 142, 156 (Tex.App.-Texarkana 2005, pet. ref'd) (concluding that trial counsel's failure to object to omission of an accomplice-witness instruction allowed the jury to convict without corroborating evidence); *Howard v. State,* 972 S.W.2d 121, 128–29 (Tex.App.-Austin 1998, no pet.) (concluding that because the conviction relied overwhelmingly on the testimony of the accomplice witness, an accomplice-witness instruction was "critical to the outcome of the case").

■ We note that the testimony by the non-accomplice witnesses need not be sufficient, by itself, to prove the defendant guilty of the offense beyond a reasonable doubt. *See Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App.1994). We have previously

discussed how the non-accomplice evidence sufficiently connected Gonzalez to the offense that was committed against Wilson to satisfy the requirements of article 38.14 of the Texas Code of Criminal Procedure. We have also explained why the jury in Gonzalez's case would not have doubted or disregarded the evidence demonstrating Gonzalez's involvement in the robbery. The evidence demonstrates that Gonzalez was in the vicinity of the robbery on the date it occurred, that Gonzalez was with Swarthout on that date, that he was seen with Swarthout after the robbery occurred, that the victim identified Swarthout as one of the persons who was involved in his robbery, and that Gonzalez had on a bloody shirt following a robbery in which Wilson received severe cuts to his scalp.

Based on the record here, there is both substantial non-accomplice testimony and that testimony has sufficient quality to connect Gonzalez to the aggravated robbery. Even when evaluated under the standard established in *Davis,* we conclude that Gonzalez has not met the second prong of the *Strickland* test. *See Davis,* 278 S.W.3d at 352–53 (concluding that under the facts of that case, defendant was not harmed by the absence of an accomplice-witness instruction). We overrule issue two. Having overruled Gonzalez's issues, we affirm the trial court's judgment.

AFFIRMED.