ACCEPTED
06-14-00074-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/8/2015 3:58:15 PM
DEBBIE AUTREY
CLERK

# IN THE COURT OF APPEALS FOR THE
## SIXTH DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

5/8/2015 3:58:15 PM

DEBBIE AUTREY
Clerk

**TYRONE DENARD ANDERSON**
APPELLANT

§
§

v.

§    **Nos.    06-14-00074-CR**

§

**THE STATE OF TEXAS,**
APPELLEE

§
§
§

---

## STATE'S BRIEF

---

ON APPEAL FROM THE 354th DISTRICT COURT
HUNT COUNTY, TEXAS
TRIAL COURT CAUSE NUMBER 29,512
THE HONORABLE RICHARD A. BEACOM, JR., JUDGE PRESIDING

**NOBLE D. WALKER, JR.**
District Attorney
Hunt County, Texas

**STEVEN LILLEY**
Assistant District Attorney
P.O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX        75403
(903) 408-4180
FAX (903) 408-4296
State Bar No. 24046293

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

INDEX OF AUTHORITIES ....................................................................................... ii

SUMMARY OF THE STATE'S ARGUMENT....................................................... 2

ARUGUMENT....................................................................................................4

PRAYER................................................................................................15

CERTIFICATE OF SERVICE.................................................................15

CERTIFICATE OF COMPLIANCE........................................................16

# INDEX OF AUTHORITIES

CASES

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 8 L.Ed. 674

(1994)...................................................................................................11, 13


Almanza v. State, 686 S.W. 2d 157 (Tex. Crim. App. 1985)..........................5-6

Ambrose v. State, ----- S.W.3d ----- (Tex. App. San Antonio, 2015, pet. filed)

    (designated for publication)..................................................................5

Armstrong v. State, 340 S.W.3d 749 (Tex. Crim. App. 2011).........................10

Bone v. State, 77 S.W.3d 828 (Tex. Crim. App. 2002)..............................11, 12

Casanova v. State, 383 S.W.3d 530 (Tex. Crim. App. 2012).......................5, 6

Davis v. State, 278 S.W.3d 346 (Tex. Crim. App. 2009)............................13, 14

Ex Parte Zapeda, 819 S.W.2d 874 (Tex. Crim. App. 1991)...........................6-7

Golihar v. State, 46 S.W.3d 243 (Tex. Crim. App. 2001)..............................9-10

Gonzalez v. State, 350 S.W.3d 356

    (Tex. App. Beaumont 2011, pet. dism'd)............................................13, 14

Herron v. State, 86 S.W.3d 621 (Tex. Crim. App. 2002)...............................5, 6

Locke v. State, 201 S.W.3d 744 (Tex. Crim. App. 2006)...................................4

Lopez v. State, 343 S.W.3d 137 (Tex. Crim. App. 2011)..................................11

Saunders v. State, 817 S.W.2d 688 (Tex. Crim. App. 1991)..........................6, 7


LAWS AND STATUES

U.S. Const. Amend. V................................................................................10-11

Texas Code of Crim. Pro. Art. 29.03..........................................................7-8

Texas Code of Crim. Pro. Art. 29.08..........................................................7-8

# IN THE COURT OF APPEALS FOR THE
# SIXTH DISTRICT OF TEXAS AT TEXARKANA

**TYRONE DENARD ANDERSON**

    APPELLANT           §

                                 §

      v.                    §       **No. 06-14-00074-CR**

                                 §

**THE STATE OF TEXAS,**       §

    APPELLEE           §

---

## STATE'S BRIEF

---

TO THE HONORABLE COURT OF APPEALS:

NOW COMES the STATE OF TEXAS, Appellee, in this appeal from Cause No. 29,512 in the 354th Judicial District Court in and for Hunt County, Texas, Honorable Judge Richard A. Beacom, Jr., Presiding, now before the Sixth District Court of Appeals, and respectfully submits this its brief to the Sixth District Court of Appeals in support of the judgment of conviction and sentence in the court below.

## SUMMARY OF ARGUMENT

In his first point of error, Appellant alleges that the trial court committed reversible error when it failed to include an accomplice witness instruction in the jury charge. The State's case relied, in part, on the testimony of a co-defendant. Because the co-defendant was charged with the same crime as Appellant, the co-defendant was an accomplice as a matter of law. Therefore, the trial court should have included an accomplice witness instruction within the jury charge. This error, however, was harmless due to the nature and the extent of the non-accomplice witness testimony which tended to connect Appellant to the offense charged. Specifically, the State introduced jail phone calls made by Appellant which show his control of the cocaine in question and his connection to the accomplice's possession of the cocaine.

In his second point of error, Appellant alleges that there was a fatal variance between the allegations contained in the indictment and jury charge, and the proof produced at trial. Appellant, however, ignores key pieces of evidence and testimony in his argument on this point. Taken as a whole, the evidence produced against Appellant was not at odds with either the jury charge or the indictment and no variance occurred.

In his third point, Appellant alleges that the assessment of court costs against him violated his Double Jeopardy rights against being punished twice for the same offense. However, Texas statutory law provides for the recovery of court costs against a defendant. These costs are not considered punitive, but compensatory and not a punishment against Appellant. Therefore, Appellant's Double Jeopardy rights have not been violated.

Finally, Appellant alleges that his trial counsel rendered ineffective assistance of counsel. The specific inadequacies alleged are either complaints about the failure to object to items that were not objectionable, or involve allegations that counsel neglected to provide a specific factual defense for which there is no proof that trial counsel was aware of. All of Appellant's allegations

2

failure under either or both prongs of the Strickland test for ineffective assistance of counsel.

It is true that trial counsel committed error by failing to notify the court of the omission of the accomplice witness instruction in the jury charge. However, the character and amount of non accomplice witness testimony that tends to connect Appellant to the offense renders this error not harmful under the second Strickland prong.

## ARGUMENT

As this Court is no doubt aware, a *pro se* brief brings a unique set of challenges upon those required to respond. In reviewing the *pro se* brief filed by Appellant, the State has identified five issues that compelling a response. The State selected these issues either because they appeared to the State to have the most potential merit, or the issue was repeated several times by Appellant in different sections of his brief. If this Court desires further briefing on a particular issue not addressed by the State, we will provide a response as quickly as possible.

## I.

## Did the trial court commit reversible error by failing to include an accomplice witness instruction in the jury charge?

The first issue is whether the trial court committed error by omitting an accomplice witness instruction in the court's charge to the jury. The indictment in this case alleged that appellant did "individually and/or acting together with Johnny Frank Anderson, knowingly possess, with intent to deliver, a controlled substance, namely: Cocaine in an amount of one gram or more but less than four grams." In exchange of an offer of probation, the co-defendant Johnny Frank Anderson testified for the State.

The question of whether the court must include an accomplice witness instruction in its charge begins with the question of whether the witness should be considered an accomplice as a matter of law of as a matter of fact. A witness is an accomplice as a matter of law if he was or could have been charged with the same offense as the defendant or a lesser included charge. Locke v. State, 201 S.W.3d 744, 747 - 48 (Tex. Crim. App. 2006). Due to the fact that Johnny

4

Frank Anderson was indicted for the same charge as the defendant, he is considered an accomplice as a matter of law. When an accomplice as a matter of law testifies, the court is required to include an accomplice witness instruction in its charge regardless of whether either side requested the instruction to be included. Id. Therefore, in this case, the court was required to include an accomplice witness instruction in its charge. There was no such instruction given to the jury, therefore, the State concedes that the failure to do so was error.

## II.
## Was the omission of an accomplice witness instruction in the charge harmful?

An accomplice witness instruction informs the jurors that they cannot use the testimony of an accomplice to base a conviction unless there is some non-accomplice evidence that tends to connect the defendant to the offense charged. Herron v. State, 86 S.W.3d 621, 631 - 32 (Tex. Crim. App. 2002). Once it is determined by the jury that such evidence exists, the purpose of the instruction has been fulfilled. Id. Therefore, non-accomplice witness evidence contained the record can render the failure to include an accomplice witness instruction harmless. Id. Ultimately, the question of whether the error in omitting the instruction is harmful must be determined by the strength of the corroborating evidence. Casanova v. State, 383 S.W.3d 530, 534 (Tex. Crim. App. 2012).

The degree of harm, and by extension, the amount of non-accomplice evidence required to show harmful error depends upon whether the error was brought to the trial court's attention under the well known Alamza standard. Ambrose v. State, ----- S.W.3d ----- (Tex. App. San Antonio, 2015m pet. filed) (designated for publication). When the trial court persists in its error despite objection by either side, the complaining party on appeal must show "some harm" to require reversal. When neither party brings the error to the court's attention,

the complaining party must show "egregious harm." Almanza v. State, 686 S.W. 2d 157, 171 (Tex. Crim. App. 1985).

In the accomplice witness instruction area, egregious harm was committed looks specifically to the strength of the non-accomplice evidence. The weaker the evidence, the more likely the reviewing court is to find egregious harm. "Corroborating evidence that is exceedingly weak—that is to say, evidence that, while it is legally sufficient to tend to connect, is nevertheless inherently unreliable, unbelievable, or dependent upon inferences from evidentiary fact to ultimate fact that a jury might readily reject—may call for a conclusion that the failure to give the accomplice-witness instruction resulted in harm regardless of whether the deficiency was objected to. Corroborating evidence this weak may thus result in both egregious harm and some harm." Casanova, 383 S.W.3d at 539.

The egregious harm standard is a difficult one for an appellant to meet, "Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" Herron v. State, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) *quoting* Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Whether the omission of the instruction is ultimately harmful will be resolved by looking at the non-accomplice evidence for its reliability or believability and how compellingly it tends to connect the defendant to the offense. Casanova, 383 S.W.3d at 539.

It is instructive to examine cases where the Court of Criminal Appeals found egregious harm when the accomplice witness instruction was omitted from a jury charge. In Ex Parte Zapeda, apart from accomplice testimony, evidence only showed that the applicant had been near the site of a murder and with the accomplices before the murder victim was present. Evidence also showed that the applicant attempted to sell a rifle to another person the same day as the

6

murder. The Court found "none" of the remaining evidence tended to connect the defendant to the actual commission of the murder, therefore, the applicant suffered egregious harm. Ex Parte Zapeda, 819 S.W.2d 874, 877 (Tex. Crim. App. 1991). In Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991), the defendant was charged with arson. The only items tending to connect the defendant to the crime apart from accomplice testimony was evidence that the defendant had suspicious financial circumstances.

In this case, the primary source of non accomplice evidence was the five recorded jail phone calls made by Appellant and introduced as State's Exhibit 1A. The voice on the recording making the phone calls was identified by non accomplice witness Detective Warren Mitchell as being that of Appellant. Reporter's Record Vol. 5 p. 38. Detective Mitchell also identified the moniker "Turk" that the caller used to identify himself as being the street name that Appellant commonly used. R.R. Vol. 5 p. 133.

The phone calls found on Exhibit 1A show a pattern on the part of Appellant which clearly tends to connect him to the crime of possession of cocaine with intent to deliver. The first phone call (looking at the contents of the disk from left to right) is between appellant and the accomplice witness. Appellant requests that accomplice retrieve a sock with money, put some of the money on Appellant's jail account, have the accomplice keep some money for his troubles and put the rest away for safekeeping. During the critical second phone call, Appellant discovers that a couch remained at his house. When he discovers this, Appellant tells his accomplice too look for a hole in the couch and remove what he finds there. Appellant does not tell his accomplice what the item is, though he repeatedly says words to the effect of "You know what I'm saying," which a reasonable juror could interpret as the Appellant telling the accomplice to look for this material but Appellant cannot tell the accomplice on a recorded call what he is looking for. Detective Mitchell explained during his testimony that this behavior did not surprise him as drug dealers are aware that their phone call may

7

be reviewed and his unwillingness to describe the item the accomplice was retrieving or its contents was a clear clue to him that the item contained contraband. R.R. Vol. 5 pp 39-40.

During the third phone call, Appellant calls his mother. When his mother tells him that the accomplice has been arrested, Appellant expresses disbelief but wants to know in particular what the accomplice was arrested for and where the accomplice's car went after the arrest. Appellant next calls a woman named "Donna" to attempt to get more details on the accomplice's arrest. In discussing the accomplice's arrest with Donna, Appellant states, "I talked to Johnny Frank earlier. I hope it was noting I did that caused all of this." (several "filler" words omitted). During the fifth phone call, Appellant is speaking to a female (likely again his mother). Appellant is concerned with the trouble that his accomplice is now in and asks that his accomplice's lawyer come talk to Appellant. The reason for the talk with the lawyer? Appellant states, "[Be]cause I ain't letting Johnny Frank take this." Appellant makes several other comments of dismay and sadness about his accomplice being placed in jail. During portions of the fourth phone call and the majority of the fifth call, the listener can hear inflections in Appellant's voice which a jury could reasonable interpret as remorse over his accomplice's arrest.

In addition to Appellant's own words connecting him to the cocaine found in the accomplice's possession, Detective Mitchell impersonated a marijuana dealer named "Scott" and had two conversations with the accomplice that tend to connect Appellant to the offense. When "Scott" informed Johnny Frank Anderson that Appellant had instructed "Scott" to pick up the contents from the couch and any other items, Johnny Anderson did not question the legitimacy of the caller or that his instructions from Appellant were valid. To the accomplice, any direction about what to do with the bag and and its contents that came from Appellant were to be followed. Johnny Frank Anderson then very quickly performed exactly as instructed. Johnny Anderson left his house, got into his car

8

and drove toward Appellant's home to meet "Scott" to turn over the contents of the bag, just as he was told to do. The fact that the accomplice was doing with the bag as he was told by Appellant through an intermediary shows Appellant's control over the cocaine and Johnny Frank Anderson and tends to connect Appellant to the cocaine itself.

### III.
### Was there a fatal variance between the indictment, the jury charge, and the proof produced at trial?

Appellant alleges in his brief that he was a victim of a conviction based upon a fatal variance between the indictment, the proof adduced at trial, and the court's charge. Essentially, Appellant alleges that the indictment accused Appellant of possessing cocaine with intent to sell, but the proof at trial varied from this allegation. The jury charge once again informed the jury to find him guilty of possession of cocaine with intent to sell it if they believed the allegations beyond a reasonable doubt.

When the allegations in the indictment and jury charge are consistent but differ in some way from the actual proof at trial, a variance has occurred. A fatal variance occurs between an indictment and the proof at trial when there is a variance between the two that is "material" and the variance prejudices a defendant's substantial rights. Golihar v. State, 46 s.W.3d 243, 257 (Tex. Crim. App. 2001). This doctrine is meant to ensure that a defendant is aware of the exact nature of the charges against him to a sufficient degree that he may prepare for trial, and to prevent the possibility that he may be tried two times for the same conduct. Id. at 248. A variance that is immaterial is disregarded because such a variance does not prejudice the substantial rights of a defendant. Id. at 258. For example, in Golihar the indictment and jury charge alleged theft of a go cart with a particular model number which was different from the model

number given during testimony. The court found the variance immaterial because the defendant was adequately notified of the allegations against him and he would not be subject later to charge for the same conduct. Id.

In this case, Appellant complains that the indictment and jury charge allege that Appellant possessed cocaine in an amount of one gram or more but less than four grams with intent to deliver. However, Appellant contends that the evidence at trial showed that the bag in the possession of the accomplice only contained marijuana. Appellant bases this contention by repeatedly pointing out that the accomplice only admitted to seeing marijuana in the bag when he looked inside of it. However, Appellant completely ignores the testimony of Detective Mitchell, who stated that baggies containing a white substance were also found in that bag when it was searched. Furthermore, Nick Grizzle from the Texas Department of Public Safety Crime Lab testified that he scientifically tested the white substance and concluded that the substance was cocaine.

Therefore, there was no variance between the allegations in the indictment, the jury charge and the facts adduced at trial. Because there was no such variance, Appellant's third point of error should be overruled.

## IV.

## Was the assessment of costs of court against Appellant a violation of his Double Jeopardy rights?

Apellant contends that the district clerk's criminal cost bill assessed against him (Appellant's Exhibit 1) constitutes a violation of his double jeopardy right against multiple punishments for the same offense. The Court of Criminal Appeals has found, however, that costs of court are compensatory and not punitive. Armstrong v. State, 340 S.W.3d 749, 767-68 (Tex. Crim. App. 2011). They are not part of a sentence. Id. at 768. Due to the fact that such costs are

not a "conviction" or a "punishment," defendant's double jeopardy rights are not violated by the assessment of costs of court.  *See* U.S. Const. Amend. V.

## V.
## Did the trial attorney render ineffective assistance of counsel?

The final issue the State will address is whether Appellant's trial counsel committed ineffective assistance of counsel.  Appellant comments at length about several areas he views as ineffective assistance by the trial attorney.

A trial attorney will only be found ineffective if his performance is found deficient under the well known Strickland Test.  The Strickland test requires that a defendant show on appeal that trial counsel's conduct fell below an objective standard of reasonableness and that but for the deficiencies of counsel, there is a reasonable probability that the result of the trial would have been different.  10. The Texas Court of Criminal Appeals has repeatedly stated that a direct appeal is not typically the appropriate avenue to urge a claim of ineffective assistance of counsel.  *See e.g.* Lopez v. State, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Without a clear record of patently unreasonable choices and tactics by defense counsel, the appellate court is simply not in a position to presume that counsel acted unreasonably.   "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

First, Appellant complains that his trial attorney was ineffective for failing to object to the allegedly "false and misleading" indictment and jury charge.  This allegation is likely related to Appellant's claim that there was a fatal variance between the evidence adduced at trial and the allegations in the indictment and jury charge.  As the State has shown, there existed no such variance and the indictment and jury charge were not misleading in any way.  Therefore, there was

11

no proper objection to be the made in this instance and any objection would have been overruled.

Secondly, Appellant complains that counsel was ineffective for failing to provide evidence that Appellant was only referring to a starter pistol hidden in his couch when speaking with his accomplice and not cocaine and other illegal drugs. Appellant does not state, and the record does not reflect, that counsel was aware of this possible defense. A claim of ineffective assistance of counsel must be firmly footed within the record. Bone, 77 S.W.3d at 836-37. Without any record of this defense being available to counsel, it cannot be said that she willfully disregarded such defense. Therefore, this allegation should be overruled.

Thirdly, Appellant complains that counsel did not continue to object to the State repeatedly leading the accomplice witness while he testified. Appellant, however, does not cite to any incidence on the record where the State was leading the accomplice and his attorney should have objected. Nor does Appellant make any showing that any objection of leading would have the resulted in a different outcome had his attorney objected. Without these showings, this allegation of ineffective assistance of counsel should be overruled.

Fourth, Appellant complains that his counsel was ineffective for failing to urge a motion for new trial upon the trial court based upon the fact that Appellant's double jeopardy rights had been violated by the assessment of court costs. As the State has shown, such assessment was not a violation of Appellant's double jeopardy rights and a motion for new trial based upon such a claim would have been overruled. Therefore, this claim of ineffective assistance of counsel should be overruled.

Finally, Appellant claims that his counsel was ineffective for failing to object to the State's improper bolstering of the accomplice witness Johnny Frank Anderson while he testified. Again, Appellant cites no specific examples of such bolstering which his attorney should have objected to. Without a record of such

improper testimony for which an objection would have been sustained, Appellant cannot show his attorney's performance was deficient and this allegation should similarly be overruled.

There exists one issue regarding trial counsel's performance which the State will raise independent of Appellant's brief. It is apparent, as the State has explained previously, that the trial court should have included an accomplice witness instruction in the jury charge. The failure by defense counsel to request such an instruction when none was included should be addressed in the context of a claim of ineffective assistance of counsel.

A failure to request an accomplice witness instruction has been uniformly found by reviewing courts to be an error by trial counsel that satisfies the first prong of Strickland. See e.g. Davis v. State, 278 S.W.3d 346, 252 (Tex. Crim. App. 2009); Gonzalez v. State, 350 S.W.3d 356, 361 (Tex. App. Beaumont 2011, pet. dism'd).

The more difficult hurdle for a defendant in making an ineffective assistance claim based upon the failure to request an accomplice witness instruction is the second Strickland prong. The Court of Criminal Appeals has explained the examination that must be made in evaluating the second prong in this context. The question is whether, but the attorney's failure to object to the accomplice witness instruction, the proceeding would have been different. The answer, the Court said, "will generally turn on whether there was a substantial amount of non-accomplice evidence and whether the record reveals any rational basis on which the jury could have doubted or disregarded that evidence." Davis, 279 S.W.3d at 353.

This standard sounds very similar to the analysis of whether a trial court's failure to include an accomplice witness instruction was harmful error. In practice, the two standards appear indistinguishable. In Gonzalez, the Beaumont court included a lengthy list of court of appeals decisions finding both a failure to include the instruction to be ineffective assistance and not ineffective assistance

13

worthy of reversal. *See* <u>Gonzalez</u>, 350 S.W.3d at 361. In each case mentioned, the reviewing court found reversible ineffective assistance when the non accomplice evidence was non existent or weak. The same error was not reversible when the non accomplice evidence was extensive and/or compelling. <u>Id.</u> In fact, after a review of the caselaw, the State can find no where a appellate court has found that the trial court did not commit harmful error by failing to include an accomplice witness instruction, but did find the defense counsel committed ineffective assistance of counsel by failure to object to the omission of the instruction.

With this in mind, the State contends that a review of the non accomplice evidence outlined previously leads to the conclusion that the failure of trial counsel to request an accomplice witness instruction may have been error, but the result of the trial would not have been different. Borrowing the language of <u>Davis</u>, there was a substantial amount of non accomplice evidence, particularly found in the jail phone calls, and the record reveals no rational basis for the jury to disregard or doubt the evidence.

Due to the strength of the evidence, the inclusion of an accomplice witness instruction would have made no difference in the outcome of the trial. Therefore, the error of counsel was harmless and Appellant's claim of ineffective assistance should be overruled.

## PRAYER

Appellant's trial was without prejudicial or fundamental error. The State prays that Appellant's conviction and sentence be affirmed.

Respectfully submitted,

**NOBLE D. WALKER, JR.**
District Attorney
Hunt County, Texas

STEVEN LILLEY
Assistant District Attorney
P.O. Box 441
4th Floor Hunt County Courthouse
Greenville, TX 75403
State Bar No. 24046293
(903) 408-4180
FAX (903) 408-4296

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been delivered to Appellant, *pro se*, via mail on May 8, 2015.

STEVE LILLEY
Assistant District Attorney

15

## CERTIFICATE OF COMPLIANCE OF TYPEFACE AND WORD COUNT

In accordance with Texas Rules of Appellate Procedure 9.4 (e) and (i), the undersigned attorney of record certifies that Appellees Brief contains 13-point typeface of the body of the brief, 3,496 words, excluding those words identified as not being counted in appellate rule of procedure 9.4(i)(1), and was prepared on Microsoft Word 2007.

Steven Lilley
Attorney for the State