IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2024 Session

## ROBERT EUGENE CALLAWAY v. LINDA MARIE CALLAWAY

**Appeal from the Circuit Court for McMinn County**
**No. 27589          J. Michael Sharp, Judge**

___

**No. E2024-00251-COA-R3-CV**

___

In this post-divorce action, the trial court partially granted the husband's petition to modify or terminate spousal support, reducing the husband's monthly alimony *in futuro* obligation to the wife from $1,750.00 to $1,500.00 upon finding that the husband's retirement constituted a substantial and material change in circumstance warranting the reduction. The husband has appealed, arguing that the court erred by declining to terminate or further reduce his support obligation. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Jillyn M. O'Shaughnessy and Lawson Konvalinka, Chattanooga, Tennessee, for the appellant, Robert Eugene Callaway.

Mark Randall Sellers, Cleveland, Tennessee, for the appellee, Linda Marie Callaway.

## OPINION

### I. Factual and Procedural Background

The petitioner, Robert Eugene Callaway, DVM ("Husband"), and the respondent, Linda Marie Callaway ("Wife"), were married for thirty-five years. The parties were divorced on April 1, 2009, by order of the McMinn County Circuit Court ("trial court"). As part of the divorce judgment, the court awarded to Wife monthly alimony *in futuro* in the amount of $1,750.00. The court directed that "[t]his alimony shall cease upon the death or remarriage of [Wife] and/or upon the death of [Husband]." In the divorce order,

the court found, *inter alia*, that Husband was a veterinarian with a successful practice while Wife, although trained as a histology technician, had "not worked in any meaningful employment outside the home since 1999."

On September 30, 2022, Husband filed a "Petition to Terminate (and/or Modify) Alimony." It is undisputed that Husband had paid alimony as ordered since entry of the divorce judgment. Husband had remarried in May 2009, and his wife had died in August 2023. In his petition, Husband alleged that a substantial and material change of circumstance had occurred since entry of the divorce judgment because (1) Wife was cohabitating with her ex-husband from a previous marriage and was either being partially supported by or was partially supporting him; (2) Wife's mother had died and left her an inheritance; and (3) Husband had retired in 2021 at the age of seventy-two and no longer earned an income through his veterinary practice. Husband requested that the trial court terminate the alimony retroactive to when Wife began cohabiting with a third party or, in the alternative, terminate or reduce his alimony obligation based on the other alleged grounds. Husband also requested an award of attorney's fees and expenses.

Wife filed an answer on November 7, 2022, denying Husband's allegation of cohabitation. Wife asserted that her need for alimony had actually increased and raised, as what she termed an "affirmative defense," her health concerns, which included diabetes and "a plethora of significant medical issues." Wife also raised an "affirmative defense" that Husband had received "a much larger inheritance" after the death of a loved one than Wife had.

Following various discovery issues, Wife filed a counter-petition on May 10, 2023, requesting an increased amount of alimony *in futuro*. Wife alleged that a material change in circumstance had occurred because Husband now had the ability to pay an increased amount of support while she remained the disadvantaged spouse. Basing her allegation on documents produced in discovery, Wife requested an unspecified increase in alimony *in futuro*, as well as an award of attorney's fees and expenses.

Husband filed an answer to the counter-petition on November 13, 2023, denying all substantive allegations. He concomitantly filed an income and expense statement, reflecting a net monthly income of $3,956.93 from a combination of Social Security benefits and interest income. Husband listed total monthly expenses in the amount of $10,184.29, including his spousal support obligation to Wife.

The trial court conducted a bench trial on December 1, 2023, during which the parties both testified. Wife also presented testimony from Bill K., the parties' former neighbor and Wife's friend, and from Paul C., Wife's former husband and alleged paramour. Exhibits included, *inter alia*, each party's income and expense statement; a

graph of Husband's income from self-employment for the years 2019 to 2023; Husband's federal income tax returns for the year 2009 and the years spanning 2017 through 2022, which were all joint returns with his deceased wife; Wife's federal income tax returns from 2019 through 2022; records of inheritance monies distributed respectively to Husband and to Wife; both parties' Social Security, pension, and bank account records; and documentation of Paul C.'s employment and living situation with his family's business in Indiana. In her income and expense statement, Wife reported that she received a total net income from Social Security benefits and spousal support of $2,410.25 per month and that her monthly expenses equaled $2,933.51.

The trial court entered an order on January 19, 2024, finding that Husband's 2021 retirement was objectively reasonable given his age and his deceased wife's need for care at the time of Husband's retirement. The court noted that at the time of trial, Husband was seventy-five years of age and Wife was seventy-seven. The court determined that Husband's retirement "constitute[d] a substantial material change in circumstances so as to permit modification of his spousal support obligation."

As to Wife's relationship with Paul C., who was eighty-one years of age at the time of trial, the court credited Paul C.'s testimony that he visited Wife "on a regular basis, staying with her usually between 100-110 days each year" but that his primary residence was in Indiana, where he was employed part-time with a business owned by family members and where he maintained a living space on the business premises. The court also credited Bill K.'s testimony that he believed Paul C. and Wife to be "simply friends" and that Paul C. had stayed in Wife's home while she was away caring for her mother and had performed home improvement tasks for both Wife and Bill K. The court concluded that there was no "credible proof that [Paul C.] [was] adding to the income and/or in any way supporting [Wife]" or that Wife was "supporting [Paul C.]."

Having determined that Husband's retirement constituted a substantial and material change in circumstance, the trial court proceeded to consider statutory factors applicable to whether Husband was "entitled to a reduction or termination of his support obligation." The court noted that the most important of these factors were "the financial ability of the obligor to provide for the support and [the] financial need of the party receiving support." The court found that Wife remained the economically disadvantaged party with a need for ongoing spousal support. The court also found that Husband had the ability to pay support and that his income "remain[ed] more than four times greater than [Wife's] income." The court expressly stated that it had "great concerns" about Husband's credibility concerning his income and the extent of his expenses. However, the court reduced Husband's support obligation from $1,750.00 per month to $1,500.00 per month based upon Wife's "reasonable monthly need" and concluded that this

modification afforded "equal consideration to both parties' changed circumstances." Husband timely appealed.

## II. Issues Presented

Husband presents two issues on appeal, which we have restated slightly as follows:

1. Whether the trial court erred in its factual findings regarding Husband's income and expenses that were purportedly based exclusively on the court's interpretation of documentary evidence.

2. Whether the trial court erred by prioritizing Wife's need over Husband's ability to pay his alimony obligation after the court found that Husband's retirement constituted a substantial and material change of circumstances.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

Concerning review of decisions involving the modification of spousal support, this Court has explained:

Because modification decisions are "'factually driven and call[] for a careful balancing of numerous factors,'" trial courts are given "'wide latitude'" when deciding to increase or decrease spousal support. *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)); *see also Winne v. Winne*, No. E2018-01050-COA-R3-CV, 2019 WL 5606928, at *2 (Tenn. Ct. App. Oct. 30, 2019). When reviewing a trial court's modification decision, we are disinclined to second-guess the trial court or to substitute the trial court's

- 4 -

judgment with our own. *Winne*, 2019 WL 5606928, at \*2 (citing *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)). Indeed, "[w]e presume that the trial court's decision is correct and review the evidence in the light most favorable to the decision." *Id.* (citing *Gonsewski*, 350 S.W.3d at 105-06). We will not reverse the trial court's modification decision absent an abuse of discretion. *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010). An abuse of discretion occurs when a court "applie[s] incorrect legal standards, reache[s] an illogical conclusion, base[s] its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

*Strickland v. Strickland*, 644 S.W.3d 620, 627 (Tenn. Ct. App. 2021).

### IV. Modification of Alimony *in Futuro*

Husband contends that the trial court erred by denying his request to terminate his alimony *in futuro* obligation or to more significantly reduce it. In support of this contention, Husband raises two issues, arguing that the trial court erred by (1) making inaccurate factual findings predicated on documentary evidence regarding Husband's income and expenses and (2) prioritizing Wife's need over Husband's ability to pay. At trial, Wife did not dispute the reasonableness of Husband's decision to retire, and on appeal, she does not dispute the trial court's finding that Husband's retirement constituted a substantial and material change in circumstance. She also does not challenge the trial court's denial of her request to increase the amount of Husband's monthly obligation or the court's decision to reduce the amount from $1,750.00 to $1,500.00. Instead, Wife maintains that the trial court properly considered the applicable statutory factors to find that she had a need for and Husband had the ability to pay $1,500.00 monthly in alimony *in futuro*. Upon thorough review of the record and applicable authorities, we discern no abuse of discretion in the trial court's modification of Husband's monthly alimony *in futuro* obligation to $1,500.00.

Alimony *in futuro* "is intended to provide support on a long-term basis until the death or remarriage of the recipient." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011) (citing Tenn. Code Ann. § 36-5-121(f)(1)). Tennessee Code Annotated § 36-5-121(f)(2)(A) (West March 31, 2022, to current) provides: "An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." As this Court has explained regarding modification of an alimony award:

A change [in circumstance] is considered substantial when it significantly affects either the obligor's ability to pay or obligee's need for support. *Bogan v. Bogan*, 60 S.W.3d 721, 728 (Tenn. 2001); *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). A change is considered material if the change occurred since the original support decree's entry. Even a substantial and material change of circumstances does not automatically result in a modification. *Bogan*, 60 S.W.3d at 730. Modification must also be justified under the factors relevant to an initial award of alimony, particularly the receiving spouse's need and the paying spouse's ability to pay. *Id.* Where there has been such a change in circumstances, the ability of the obligor spouse to provide support must be given equal consideration to the obligee spouse's need. *Id.* Generally, the party seeking the modification bears the burden of proving the modification is warranted. *Freeman v. Freeman*, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003).

*Byrd v. Byrd*, 184 S.W.3d 686, 691 (Tenn. Ct. App. 2005). *See Wilhoit v. Wilhoit*, No. M2017-00740-COA-R3-CV, 2018 WL 934582, at *2 (Tenn. Ct. App. Feb. 16, 2018) ("Having met the threshold requirement of material and substantial change in circumstance, Husband has the burden to establish that the modification is justified based on the same factors that are relevant to an initial award of alimony.").

Tennessee Code Annotated § 36-5-121(i) (West March 31, 2022, to current) provides the following factors to be considered in determining the type and amount of an award of spousal support:[1]

(1)     The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)     The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

---

[1] When applying the statutory factors, the trial court referenced Tennessee Code Annotated § 36-5-101(d), citing our Supreme Court's decision in *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001), and this Court's decision in *Givler v. Givler*, 964 S.W.2d 902, 907 (Tenn. Ct. App. 1997). However, both *Bogan* and *Givler* were decided prior to the General Assembly's 2005 amendment to § 36-5-101 and enactment of Tennessee Code Annotated § 36-5-121, which recodified the spousal support statutory factors at § 36-5-121(i). *See* 2005 Tenn. Pub. Acts, Ch. 287, § 2 (S.B. 2091), eff. July 1, 2005. The factors remained essentially the same between the two statutes, and neither party has raised an issue regarding the mistaken reference, which we deem to have constituted harmless error.

(3)     The duration of the marriage;

(4)     The age and mental condition of each party;

(5)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)     The separate assets of each party, both real and personal, tangible and intangible;

(8)     The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

(10)    The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)    The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)    Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"[T]he two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support." *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001). In modification cases, "the ability of the obligor to provide support must be given at least equal consideration." *Id.*

### A.  Interpretation of Documentary Evidence

Husband contends that the trial court erroneously interpreted documentary evidence related to his income and thereby erroneously questioned his credibility.

Acknowledging that this Court affords great deference to a trial court's credibility determination, Husband nonetheless urges this Court to discount the trial court's credibility finding and review the evidence concerning Husband's income *de novo*. Upon review of the record, we determine that the trial court considered both documentary evidence and trial testimony in reaching its credibility findings, and we therefore decline Husband's invitation to discount the trial court's credibility determination regarding Husband. *See Morrison*, 338 S.W.3d at 426 ("Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary."). However, we will address Husband's allegations of error in the trial court's interpretation of documentary evidence. *See Kelly v. Kelly*, 445 S.W.3d 685, 693 (Tenn. 2014) ("[W]hen factual findings are based on documentary evidence, an appellate court may draw its own conclusions with regard to the weight and credibility to be afforded that documentary evidence.").

Specifically concerning each party's respective financial status at the time of trial and Husband's credibility in presenting his financial situation, the trial court made the following findings of fact:

> The court finds that [Wife's] mother did in fact pass away, and she did receive an inheritance of about $184,000.00 in September of 2022. However, the court also finds that [Husband's] loved one also passed away since the date of the parties' divorce, and he too received an inheritance of about $585,000.00.

> The court finds that [Husband] receives Social Security income each month in the amount of $3,863.00 and an additional $333.33 in interest income, based upon his testimony. The court finds that [Wife] receives monthly Social Security income in the amount of $1,021.90. However, after deductions, she receives $928.00 per month.

> The court found that after [Wife] received her inheritance, she paid off several bills. The court finds that she currently has her home paid for, and about $76,000.00 in savings. On the other hand, the court finds that [Husband] has about $650,000.00 in various savings accounts. The court was presented [Husband's] income and expense statement, showing total net monthly income of $3,956.93. The court notes that this is contradicted by the fact that the evidence shows his current social security income of $3,863.00 and interest income of $333.00, for a total monthly income of $4,196.00. However, [Husband] shows that his total net monthly expenses, including his current alimony obligation of $1,750.00 per month, are

currently in the amount of $10,184.29. The court takes judicial notice of the fact that this monthly expense amount is in excess of $120,000 per year.[2] The court also takes judicial notice of the fact that [Husband] presented tax returns (see trial exhibit #7) showing that his highest total adjusted gross income, as shown by exhibit #7, was in 2020 when he shows an adjusted gross income of $151,177.00. This income included his spouse's income as well. When the court deducts the spouse's income from [Husband's] income, the court notes that his claimed current alleged expenses exceed his adjusted gross income, and would substantially exceed his taxable income and/or net income as shown on each of his tax returns. Based upon [Husband's] claimed expenses, as shown on trial exhibit #3, the court has great concerns about his credibility. The court notes that [Husband] claims that his actual income for 2019 was $101,898.00, $115,943.00 in 2020, and $53,144.00 in 2021 (see trial exhibit #4). Thus, his current claimed expenses as a single individual far exceed any income that he claims that he was making, as shown by trial exhibit #4. The court finds that [Husband's] claimed income and expenses give this court great question and concern regarding his credibility, especially as to his actual income and expenses. While it is difficult to know his true income, the court finds that his income is greater than the $3,956.93 that he shows on his income and expense statement.

In concluding that the amount of monthly alimony *in futuro* in this case should be reduced from $1,750.00 to $1,500.00, the trial court stated in pertinent part:

> The court finds, given all of the testimony and trial exhibits currently before the court, that [Wife] still possesses a financial need for a support award. . . .
>
> With respect to [Husband's] ability to provide support, the record shows that his income remains more than four times greater than [Wife's] income, if the court considers only the income shown by the parties on their respective income and expense statements (see trial exhibits #3, [Husband]; and trial exhibit #4, [Wife]). However, in this case, the court finds that it is

---

[2] We note that there is no need for a court to take "judicial notice" of evidence presented at trial. *See* Tenn. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); Tenn. R. App. P. 13(c) (providing that state appellate courts "may consider those facts established by the evidence in the trial court and set forth in the record <u>and any additional facts</u> that may be judicially noticed or are considered pursuant to Rule 14 [regarding post-judgment facts].") (emphasis added).

also necessary to consider the fact that both [Husband] and [Wife] still currently are the sole owners of either investment accounts and/or bank accounts. The court finds that both [Husband's] current bank account in excess of $600,000.00 and [Wife's] bank account currently in excess of $70,000.00 . . . are indicators, to the court, that both parties could also be receiving interest income that should be considered in any modification of the support award. Based upon this finding, the court finds that [Husband's] income shall be increased and imputed to show a 4% return on $600,000.00, which the court takes judicial notice is a little less than what is actually available in the current financial market for Certificates of Deposit. The same shall be true for [Wife] as it relates to her account in an amount the court considers at $70,000.00. Based upon this calculation, the court finds that [Husband's] imputed income is now considered to be in excess of $75,000.00 per year, or $6,250.00 per month. On the other hand, [Wife's] income is imputed to be about $1,160.00 per month, which includes $928.00 net dollars from social security, and an additional $233.00 per month, based on a 4% return on her $70,000.00 savings account. Based upon this calculation, and based upon this court's finding that her current monthly need is $2,750.00 per month, [Wife's] monthly shortfall would be about $1,589.00 per month. Based upon this calculation, the court finds that [Wife] has a definite need for ongoing support.

When the court considers [Wife's] current monthly need of about $2,750.00 for a single person as extremely reasonable, the court must also consider that [Husband's] need should be roughly similar. The court finds that [Wife] is the economically disadvantaged spouse. The court finds that [Husband] has the ability to pay support. Based upon the reasonable monthly need that the court has found exists for [Wife], the court adjusts the current support obligation of [Husband] from $1,750.00 per month to $1,500.00 per month. The court finds that the above calculation gives equal consideration to both parties' changed circumstances. The court finds that to totally eliminate all alimony from [Wife], as proposed by [Husband], would in fact impoverish her, given what the court finds to be her reasonable monthly expenses (as shown on exhibit #24). The court finds that her monthly expenses are in fact reasonable, and will likely exist for the remainder of her life, given the facts and evidence currently before the court. Furthermore, the court finds that given the amount of income and assets that [Husband] possesses, he has the ability to pay, and the court finds he has the ability to pay without any significant or substantial reduction in his assets.

Husband asserts that the trial court committed three errors when interpreting the documentary evidence of his income. First, Husband avers that the court referenced the income claimed on his 2020 federal income tax return, filed jointly with his then-wife, without acknowledging that Husband had also presented an amended 2020 tax return indicating a higher income. The court stated that Husband's "highest total adjusted gross income as shown by exhibit []7 was in 2020 when he shows an adjusted gross income of $151,177.00." Trial exhibit 7 ("Exhibit 7") is a collective exhibit of Husband's federal income tax returns for the years 2019 through 2022. It does indeed include an amended 2020 tax return for Husband and his then-wife, reflecting an adjusted gross income in the amount of $208,422.00. We agree with Husband that the court appears to have overlooked the amended return in citing the example of Husband's highest adjusted gross income.[3] However, because the court was comparing Husband's typical income to his claimed expenses, we deem the error the court made in overlooking Husband's higher adjusted gross income for one year on the 2020 amended tax return to have been harmless.[4]

Second, Husband maintains that the trial court erred by describing his self-employment income as his "actual income." Citing trial exhibit 4 ("Exhibit 4"), the court stated that Husband had claimed that "his actual income for 2019 was $101,898.00, $115,943.00 in 2020, and $53,144.00 in 2021." Exhibit 4 consists of a graph, clearly labeled as Husband's "Self Employment Income 2019-2023." Husband testified that he prepared this exhibit as "[a] history of the income of what I had from the veterinarian practice [since] 2019." On appeal, Husband contends that "[f]or the best source of [Husband's] total income, the Trial Court should have examined his income tax returns for years 2019-2022." Wife counters that the trial court's findings did include consideration of Husband's income tax returns. We agree with Wife on this point. The trial court could have been clearer in its use of the term, "actual income," but given that the court referenced the income tax returns in Exhibit 7 as well as Husband's self-employment income in Exhibit 4, the court appears to have intended "actual income" to mean Husband's income earned through his employment as a veterinarian from 2019 through 2023. The court considered Husband's other income reported on the tax returns, as evinced by the court's references to Husband's Social Security benefits and his then-

---

[3] In her appellate brief, Wife points out that the copy of Husband's 2020 amended federal income tax return included in Exhibit 7 was not signed by Husband. However, Wife presented Exhibit 7 at trial, and although Wife's counsel questioned Husband regarding his tax returns, her counsel did not challenge the validity of the unsigned 2020 amended return. We therefore determine that Wife has waived any issue regarding the amended return's authenticity on appeal. *See Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court.").

[4] The reason for Husband's higher adjusted gross income on the 2020 amended tax return is not clear from the record.

wife's income. We perceive no error in the court's consideration of Husband's self-employment income as he presented it in Exhibit 4.

Third, Husband posits that the trial court made insufficient findings of fact concerning Husband's claimed expenses pursuant to Tennessee Rule of Civil Procedure Rule 52.01, which provides in pertinent part that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Husband argues that the trial court erred by "declar[ing] [Husband's] expenses were unreasonable because they were too large compared to his income" without analyzing the reasonableness of specific expenses "through examining historical spending and his testimony." Husband urges that if this Court does not reverse the trial court's denial of his request to terminate alimony, then we should vacate the trial court's decision and remand for the trial court to enter detailed factual findings concerning the reasonableness of each expense.

In support of his position, Husband relies on this Court's decisions in *Griffin v Griffin*, No. M2019-01113-COA-R3-CV, 2020 WL 4873251 (Tenn. Ct. App. Aug. 19, 2020), and *McCormick v. McCormick*, No. W2019-00647-COA-R3-CV, 2020 WL 1042500 (Tenn. Ct. App. Mar. 4, 2020). In *Griffin*, a divorce case wherein the trial court had awarded $6,000.00 in monthly alimony *in futuro* to the wife, this Court vacated the trial court's alimony and child support orders upon determining that the trial court had failed to make "any findings regarding the reasonableness" of the husband's claimed expenses while making "detailed findings" concerning the wife's expenses. *Griffin*, 2020 WL 4873251, at *12 (emphasis added). Because the trial court in *Griffin* made no findings whatsoever concerning the reasonableness of the husband's claimed expenses, this Court determined that the trial court's judgment contained insufficient findings of fact to facilitate appellate review. *Id.* (citing Tenn. R. Civ. P. 52.01). Similarly, in *McCormick*, an alimony modification case, this Court vacated the trial court's judgment and remanded for further findings, pursuant to Rule 52.01, because the trial court had determined that the wife was able to pay a modified amount of alimony *in futuro* to the husband and had reduced the amount of the wife's claimed expenses without explaining its rationale for doing so. *McCormick*, 2020 WL 1042500, at *6-7. We determine both *Griffin* and *McCormick* to be distinguishable from the instant action.

Unlike the trial courts in *Griffin* and *McCormick*, the trial court here examined Husband's total claimed expenses, compared Husband's income and expenses, and made a specific factual finding that Husband had understated the amount of his income. Contrary to Husband's argument, we conclude that the trial court made sufficient findings of fact concerning Husband's expenses to satisfy the requirements of Rule 52.01 and to enable this Court to review the trial court's award of alimony on appeal. *See Cain-Swope v. Swope*, 523 S.W.3d 79, 99 (Tenn. Ct. App. 2016) (explaining that "one of the

primary purposes" of Rule 52.01 "is to facilitate appellate review by 'affording a reviewing court a clear understanding of the basis of a trial court's decision.'" (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013))); *see also Griffin*, 2020 WL 4873251, at *12.

Upon review of Husband's three allegations of error in the trial court's interpretation of documentary evidence, we find that the trial court's sole error was in its misapprehension of Husband's 2020 adjusted gross income. Having determined this error to be harmless, we find no reason to disturb the trial court's findings regarding Husband's claimed income and expenses, including its credibility finding. *See Morrison*, 338 S.W.3d at 426. Moreover, we conclude that the trial court properly considered both testimony and documentary exhibits in reviewing each party's financial situation.

B.  Wife's Need and Husband's Ability to Pay

Husband asserts that once the trial court had determined Husband's retirement to be a substantial and material change in circumstance, it erred by prioritizing Wife's need over Husband's ability to pay rather than considering the two equally. As Husband acknowledges, the trial court expressly quoted our Supreme Court's instruction that "[w]hile the need of the receiving spouse remains an important consideration in modification cases, the ability of the obligor to provide support must be given at least equal consideration." *See Bogan*, 60 S.W.3d at 730. However, Husband asserts that the court erred by (1) comparing the parties' financial needs as "roughly similar," (2) failing to consider Wife's individual retirement account ("IRA") and certificate of deposit ("CD") accounts, and (3) requiring Husband to pay an amount of alimony that would deplete his assets. We will address each of Husband's arguments in turn.

First, Husband posits that the trial court committed a "factual and legal" error by stating: "When the court considers [Wife's] current monthly need of about $2,750.00 for a single person as extremely reasonable the court must also consider that [Husband's] need should be roughly similar." Husband asserts that no legal authority supports the proposition that an obligor spouse's expenses should be "roughly similar" to an obligee spouse's expenses. Although we agree with Husband's assertion on this point generally, we perceive no indication in the final order that the court was requiring Husband to forego his claimed expenses to afford his spousal support obligation.

Instead, by comparing the parties' expenses, the trial court was comparing the needs of two single people, each with no current dependents and each maintaining a home. The court thus found a disparity between what it determined to be Wife's "extremely reasonable" monthly expenses of $2,750.00 and Husband's claimed expenses of $10,184.29. Husband avers that the court ignored the monthly financial obligations he

had that Wife did not, particularly a $2,190.58 mortgage payment; a $601.46 vehicle payment; a $421.00 health insurance premium; and a $1,000.00 tax payment that he had been sending to the Internal Revenue Service as an estimate of his projected income taxes. Upon review, we determine that the trial court did not ignore Husband's expenses, as Husband asserts. Rather, the court addressed the disparity between the parties' financial needs simply as a preface to determining that Wife was the economically disadvantaged spouse with a continued need for alimony and that Husband had the ability to pay alimony.

Second, Husband argues that the trial court failed to consider Wife's IRA and CD accounts among her assets when determining that she had a continued need for spousal support.[5] However, the court expressly considered "the fact that both [Husband] and [Wife] still currently are the sole owners of either investment accounts and/or bank accounts." Regarding interest income, the court found that Wife possessed approximately $76,000.00 in her savings account and imputed to her income four percent interest on $70,000.00. The court similarly imputed interest earnings on approximately $600,000.00 in Husband's savings account. Thus, the court explicitly addressed the liquid funds held by each party.

As to retirement funds, the evidence presented at trial reflected that Wife possessed an IRA and CD with a combined value of $51,847.60. Husband testified that he possessed at least one IRA account from which he was required to accept minimum distributions. When questioned further regarding distributions from retirement or other funds reflected on his federal income tax returns, Husband stated that there were "several accounts" and that when a minimum distribution was required, "all but a couple of times" he had "take[n] those required minimum distributions out of the IRA accounts and put them in a non-IRA account." Husband did not present portfolio statements reflecting the balances in the "several accounts" he referenced. Given this evidence, we determine that a direct comparison of the parties' retirement funds beyond their savings accounts was not possible. Moreover, given the totality of the parties' respective financial situations in this case, we discern no error in the court's determination that Wife was the financially disadvantaged spouse with a continuing need for spousal support.

Finally, Husband insists that the trial court erred because the spousal support obligation of $1,500.00 monthly will cause him to deplete his assets. He maintains that even at the amount of income attributed to him by the trial court of $6,250.00 monthly,

---

[5] In his appellate brief, Husband also posits that in comparing the parties' financial situations, the trial court should have considered that Wife could "access the equity in her home to help support her need" while Husband was encumbered by mortgage debt. Husband offers no authority for the proposition that the court should have required Wife to acquire debt on or sell her residence, which had been awarded to her in the divorce, to avoid a continuing need for alimony, and we find this argument unpersuasive.

his income "is still too little to cover [Wife's] alimony." Husband's income as found by the trial court included Social Security benefits of $3,863.00; interest income of $333.00; and four percent interest imputed by the trial court on approximately $600,000.00 held by Husband in a bank savings account. Husband is essentially arguing that as a retired person, he should be able to pay his support obligation solely out of his current income without accessing assets such as the principal in his savings account at all. To the contrary, statutory authority supports the trial court's consideration of Husband's assets other than income to determine whether Husband could continue paying some amount of alimony. *See* § 36-5-121(i)(7) (providing for consideration of each party's separate assets when determining an award of spousal support); *Osesek v. Osesek*, No. M2011-00984-COA-R3-CV, 2012 WL 729880, at *3 (Tenn. Ct. App. Mar. 6, 2012) ("The statute and cases are clear that assets other than income may be considered by the trial court in determining whether to modify an award of alimony to the same extent as they are considered in setting the initial award.").

Husband relies on several prior decisions of this Court indicating that an obligor should not be required to deplete assets to meet a spousal support obligation. We determine these cases to be distinguishable from the instant action because each involved a situation in which the obligor would have been required to deplete a substantial percentage of assets or would have experienced a monthly deficit with no other available assets to satisfy the support obligation. *See, e.g.*, *Bowman v. Bowman*, 836 S.W.2d 563, 569 (Tenn. Ct. App. 1991) (modifying the trial court's award of alimony to the wife to terminate in one year upon determining that if the husband were "forced to liquidate all of his assets in order to pay spousal support, he soon would have nothing from which to support himself"); *Tittle v. Tittle*, No. M2022-01299-COA-R3-CV, 2024 WL 314102, at *1 (Tenn. Ct. App. Jan. 29, 2024) (vacating and remanding for reconsideration a portion of the transitional alimony awarded to the wife in the divorce upon determining that the trial court had "failed to consider the husband's obligation to pay work-related childcare costs," "which additional expense appear[ed] to impair the husband's ability to pay" the amount awarded); *Wilhoit*, 2018 WL 934582, at *3 (granting the husband's petition to reduce the trial court's 2012 award of alimony *in futuro* to the wife upon determining that "[a]lthough he retains assets, if Husband paid the alimony as ordered by the trial court, he would have depleted his assets before the end of 2015"); *Ezekiel v. Ezekiel*, No. W2014-02332-COA-R3-CV, 2015 WL 4916930, at *7 (Tenn. Ct. App. Aug. 17, 2015) (reducing the trial court's award of alimony to the wife in the divorce from $250.00 monthly to $43.00 monthly, the amount that "by all accounts" the husband earned in "excess income," upon determining that the husband "simply [did] not have the excess income to pay" $250.00); *Floyd v. Floyd*, No. M2007-02420-COA-R3-CV, 2008 WL 5424014, at *12 (Tenn. Ct. App. Dec. 30, 2008) (affirming the trial court's denial of the wife's request for alimony in a divorce case upon determining that she had failed to establish a need for alimony and that "[e]ven with the adjustments [to the husband's income]

advocated by Wife, Husband still face[d] a monthly deficit"); *Walker v. Walker*, No. E2001-01759-COA-R3-CV, 2002 WL 1063948, at *5 (Tenn. Ct. App. May 29, 2002) (reducing the trial court's award to the wife of alimony *in futuro* in the divorce to ensure that "each party [would] have some excess income remaining and [would] not face a monthly deficit").

By contrast, here, although Husband may need to access a small percentage of his assets to meet his support obligation as modified by the trial court, we agree with the trial court's finding that he has the ability to do so "without any significant or substantial reduction in his assets." In addition to his post-retirement income, which the trial court found to be four times that of Wife's income by Husband's own calculations, Husband had what the court found to be "in excess of $600,000.00" in a bank savings account at the time of trial. In his testimony, Husband referred to this account as his "inheritance account" and acknowledged that in October 2023, a few weeks prior to trial, it contained a balance in the amount of $643,762.00. Husband explained that he had deposited the $585,000.00 he received as an inheritance from his parents into this account and that any required minimum distribution he received from his IRA account or accounts was deposited into the inheritance account. Husband also possessed what he termed an "office account," in which he had deposited the sale proceeds from his practice. At the time of trial, the office account balance was approximately $59,000.00.

Although Husband testified that he used the office account funds to pay expenses beyond his income and that he was attempting to avoid utilizing the inheritance account for expenses, he acknowledged that he would need to access the inheritance account eventually. Husband opined that if he "continue[d] at this rate, even the inheritance [would] be gone by 2031." The trial court had "great concerns" about [Husband's] credibility regarding the extent of his expenses, and we defer to the trial court on this credibility finding. *See Morrison*, 338 S.W.3d at 426. Given the evidence concerning Husband's financial resources and expenses, we determine that he failed to demonstrate that a $1,500.00 monthly alimony obligation would significantly deplete his assets. *See Jekot v. Jekot*, No. M2016-01760-COA-R3-CV, 2018 WL 4677676, at *5 (Tenn. Ct. App. Sept. 28, 2018) ("[O]ur supreme court has placed the burden on 'the obligor to demonstrate that reduction or termination of the award is appropriate.'" (quoting *Bogan*, 60 S.W.3d at 730)).

We conclude that the trial court did not abuse its discretion in determining that Wife had the need for continued spousal support payments and that Husband had the ability to pay $1,500.00 monthly to meet his obligation for that support. The trial court's modification of the alimony *in futuro* award to Wife is accordingly affirmed.

## V.  Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.  We remand this case to the trial court for enforcement of the judgment and collection of costs below. Costs on appeal are assessed to the appellant, Robert Eugene Callaway.


s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE